**RECONSTRUCTION FINANCE CORP.**

v.

**CODY FINANCE CO.**

No. 4781.

United States Court of Appeals
Tenth Circuit.

July 8, 1954.

Norman B. Gray, Cheyenne, Wyo. (J. J. Hickey, C. R. Ellery, Cheyenne, Wyo., and Hotz & Hotz, Omaha, Neb., on the brief), for appellants.

Alfred M. Pence, Laramie, Wyo., for appellee.

Before PHILLIPS, Chief Judge, and HUXMAN and PICKETT, Circuit Judges.

HUXMAN, Circuit Judge.

This is a contest between the Reconstruction Finance Corporation, herein called the RFC, and the Cody Finance Company, a co-partnership, herein called the finance company, over who has the superior right to the possession of certain assets of the Motor Sales Corporation for the purpose of liquidating them, in order to apply the proceeds from such liquidation in satisfaction of the claim each has against the motor company. This is an appeal from the judgment of the trial court determining that the finance company by virtue of two assignment agreements was the owner of certain accounts and notes receivable in question to the exclusion of the RFC, which claimed a prior lien thereon.

The decision in the case turns upon whether the appellee, the finance company, had actual knowledge or facts to put it upon inquiry, when it took its assignments of the accounts and bills receivable as security for its loan, of a prior assignment of the same assets to the RFC to secure a loan to it and, if it had sufficient information to put it upon inquiry, whether it sufficiently discharged the duty then resting upon it so as to give it a first and prior claim to the assets, notwithstanding that its assignment was subsequent in point of time to that of the RFC.

There is little dispute in the facts. The Motor Sales Company, a Wyoming corporation, was engaged in the business of selling automobiles at Cody, Wyoming. It did a large business and required extensive financing. On March 24, 1950, it borrowed $94,000 from the RFC. To secure this loan it executed certain mort-

gages and a document entitled "Blanket Assignment of Accounts and Notes Receivable." This instrument was not placed of record. It assigned to the RFC notes and accounts receivable then held or thereafter acquired while any indebtedness remained due on the loan. It permitted the motor company to retain possession of the securities, deposit the proceeds thereof in its own bank account in the First National Bank of Cody, and use them in its business. It required the motor company to maintain notes and accounts receivable in an amount of at least $30,000, with right of substitution. It provided that if at any time the accounts receivable fell below $30,000 the motor company agreed to deposit cash in the bank in trust for the RFC, which together with the notes and bills receivable on hand, would equal $30,000. The instrument constituted the bank the agent of the motor company to check the accounts and report the status thereof to the RFC. It provided in the event of default in the amount of the required deposits that the entire amount of the indebtedness should become due and all such notes and accounts receivable should immediately become the property of the RFC for the purpose of applying the proceeds thereof upon the indebtedness then due and that upon notification by the RFC the bank should then hold the cash and notes and bills for the use and benefit of the RFC. Neither the bank, the denominated agent of the motor company, nor the motor company had copies of the agreement in their files.

Sometime thereafter, the motor company needed additional financing to continue in business. On October 25, 1950, it obtained a loan of $30,000 from the finance company. On that date it executed two instruments denominated "Assignment Agreement, Chattel Mortgage and Real Estate Mortgage." By the terms thereof the motor company assigned to the finance company all notes receivable, accounts receivable and all money then due or to become due to the motor company in connection with its automobile and garage business, with authority to have and to hold and collect the same, and providing that the funds so collected and received should be the property of the finance company and should not be credited or deposited to the account of the motor sales company. These instruments were filed and recorded in the office of the county clerk.

The notes and accounts receivable so pledged were left in the custody of the motor company until about November 9, 1950. At that time the manager of the finance company, becoming alarmed at the financial status of the motor company, removed all the securities to his own place of business, where they remained except for a brief occasion when they were temporarily returned to the motor company in order that certain bookkeeping entries might be made.

The trial court made findings of fact. It found as a fact that the finance company made a search such as a reasonable prudent person would have made under like circumstances to ascertain if the assets involved were encumbered and found no existing encumbrance thereon. Based upon these and other findings, it concluded as a matter of law, 116 F.Supp. 700, that the RFC did not obtain title to the securities under its instruments and had only an equitable lien thereon. It further concluded that the finance company was a bona fide purchaser for value of the assets without actual or constructive notice of the claim of the RFC and, as such, was entitled to the assets and the proceeds thereof.

RFC in its appeal assigns two errors on which it relies for reversal. They may be combined and stated as one, as follows: 1. The court erred in finding and holding that the finance company was a bona fide purchaser for value without notice of a claim of the RFC and that it made a good faith investigation, such as a reasonable prudent person would make to ascertain the existence of other claims against these assets.

While expressing doubt that the finance company had notice of facts or circumstances imposing a duty to make

an inquiry, the court found that it had made a bona fide search to ascertain the existence, if any, of pre-existing liens on these assets, such as a reasonably prudent person would have made under like circumstances, and that such search revealed no proof of the existence of the instrument to the RFC. The rule with respect to the duty to make inquiry is well stated in 66 C.J.S., Notice, § 11b(2), page 645, as follows: "When a person has notice of circumstances which put him upon inquiry, and he actually makes due inquiry into the circumstances and either fails to discover the existence of any rights in conflict with his own or becomes satisfied that the suspicions which have been awakened are unwarranted, or that a change in the circumstances has obviated the grounds of his apprehension, he is to be regarded as having acted bona fide and without notice of the fact."

The facts from which it must be determined whether, assuming that the finance company had knowledge of circumstances sufficient to put it upon inquiry, it made a bona fide search is to be determined from the following facts. Ernest J. Goppert was the General Manager of the finance company. He was also a practicing attorney and an officer of the First National Bank of Cody. Practicing with him was Jerry Housel, who was Assistant Manager of the finance company, handling many of its transactions, and was its General Manager in Goppert's absence. At the time he was also the attorney for the Motor Sales Company. At the time Leggett, the Manager of the Motor Sales Company, approached the finance company for this loan, Goppert was on a visit to Sedan, Kansas. The motor company was in financial distress and its business was about to be closed up and time was of the essence in procuring this loan from the finance company. Accordingly Leggett and Housel phoned Goppert at Sedan, Kansas. Goppert suggested a delay until he could return to Cody and check into the matter but Leggett urged speed, stating that unless the loan could be closed that day, he would be closed up. When the matter of these accounts receivable was mentioned, Leggett assured Goppert that they were not covered by any previous security. Nonetheless, Goppert instructed Housel to make inquiry by searching the records and such additional inquiry as would seem necessary to ascertain whether or not such assets were unencumbered. Housel testified that he had been previously informed by the President of the Motor Sales Company that he thought perhaps the receivables had been included as security under the RFC loan but that the president of the motor company then stated that the RFC decided to take other security. In addition he testified that he twice searched the county records and found no evidence of the instrument and that he also inquired of the executive vice president of the First National Bank of Cody, as well as the bank's cashier, and was advised that there was nothing in the bank's records indicating an instrument of that nature. He also made an examination of certain records of the Motor Sales Company to ascertain whether or not there was any record of such an instrument there on file and found none. Thereafter in a second conversation between Housel in Cody and Goppert in Sedan, Kansas, when Goppert was assured that a search had been made and that no pre-existing lien or assignment was found, Goppert authorized the loan and it was then made. Appellant urges that the search was not sufficient and that Housel should have contacted others, including the former attorney of the motor company, the RFC itself, and one Frank O'Mahoney, who had attempted to get the RFC loan. O'Mahoney testified that he did not participate in the final closing of the loan and had no knowledge concerning it. There is nothing in the record which would establish that Housel had reason to believe that Steadman had knowledge concerning the transaction of the finance company and whether under all the circumstances he should have gone to the RFC itself is debatable.

Whether the finance company made a bona fide inquiry, assuming a duty rested upon it to make such an inquiry, presented an issue of fact to be determined from all the facts and circumstances before the trial court. As stated, we think the facts as outlined sufficiently support the court's findings and conclusions of law and the judgment based thereon and under the well established rule of this court such findings and conclusions will not be disturbed on appeal, unless clearly erroneous.[1]

It is true that in this case there were circumstances which cast suspicion upon the transaction due to the interrelationship of certain of the principals involved. But this point was not argued in the lower court and will not be considered on appeal. Furthermore, it is only one circumstance to be considered together with all the others and, in any event, in our opinion is not sufficient to overthrow the findings and conclusions of the trial court.

Affirmed.

1. Mitton v. Granite State Fire Ins. Co., 10 Cir., 196 F.2d 988; Jones v. Grinnell, 10 Cir., 179 F.2d 873; Wyoming Ry. Co. v. Herrington, 10 Cir., 163 F.2d 1004.