**Thomas C. BOGUS, Trustee in the Matter of Jacob Rosenblum, Bankrupt, Appellant,**

**v.**

**The AMERICAN NATIONAL BANK OF CHEYENNE, WYOMING, Defendant.**

**No. 9893.**

United States Court of Appeals
Tenth Circuit.

Oct. 9, 1968.

James P. Horiskey, Cheyenne, Wyo., for appellant.

Carl L. Lathrop, Cheyenne, Wyo. (David D. Uchner, Cheyenne, Wyo., with him on the brief), for appellee.

Before LEWIS, Circuit Judge, WILBUR K. MILLER, Senior Circuit Judge,* and BREITENSTEIN, Circuit Judge.

WILBUR K. MILLER, Senior Circuit Judge:

Jacob Rosenblum was adjudicated a bankrupt September 22, 1966, pursuant to an involuntary petition filed September 1, 1966, by certain of his creditors. The act of bankruptcy relied on by the petitioning creditors was that, within four months of September 1, 1966, Rosenblum had made a preferential transfer to a creditor, The American National Bank, by selling his liquor license, bar fixtures and supplies, and causing the entire proceeds of the sale to be paid to the Bank. Thomas C. Bogus became Trustee on November 2, 1966.

The Trustee filed this suit against The American National Bank on March 10, 1967, demanding judgment for $56,750, the proceeds of the sale of the liquor license and business which Rosenblum, while insolvent, paid to the Bank within four months of the involuntary petition in bankruptcy. The Bank answered that it had received $56,725 in reduction of an antecedent indebtedness which had been secured by a security interest in the liquor license, fixtures and inventory acquired in accordance with the Uniform Commercial Code in effect in Wyoming more than four months prior to the filing of the bankruptcy petition.

The answer was based on the following sequence of events. On January 11, 1965, Rosenblum, being indebted to the Bank in a sum greater than $160,000, executed to it a security agreement on his bar supplies and equipment and his liquor license, issued by the City of Cheyenne, to secure his indebtedness and future advances. A financing statement covering the same property was executed by Rosenblum the same day and was filed in the office of the County Clerk of Laramie, Wyoming, January 12, 1965.

On May 4, 1966, Rosenblum executed an assignment to the Bank which in substance said that, because of Rosenblum's default, it had become necessary to sell his liquor business; that he was further assigning to the Bank the "entirety of his business" as of May 4, 1966, "for the sole purpose of having the bank sell said business for such sum as it is able to obtain from some bona fide purchaser, the proceeds of which sale shall be applied to the loans of Jacob Rosenblum secured by said Security Agreement."

Rosenblum's liquor business was sold June 6, 1966: the inventory, furniture and fixtures for $2,900 and the liquor license for $53,825. The total of $56,725 was paid to the bank which applied it to the reduction of Rosenblum's indebtedness to it, which then approximated $190,000. The sale was made in accordance with Section 12–13, Wyoming Statutes 1957, and was approved by the City of Cheyenne which had issued the license.

These facts being undisputed, there was presented to the District Court the question whether a liquor license issued under Section 12–13, Wyoming Statutes 1957, is property in which a valid security interest can be acquired under the Uniform Commercial Code; and, if so, whether the security interest attaches to the proceeds when the liquor license is sold.

The District Court made findings of fact, from which we have drawn our summary, and reached conclusions of law, which held *inter alia* (a) that the Bank had a security interest in Rosenblum's bar property and liquor license which was "perfected" on January 12, 1965, "in accordance with the provisions of the Uniform Commercial Code—Secured Transactions, Wyoming Statutes, 1957 * * *," which of course was more than four months before the involuntary petition in bankruptcy was filed; (b) that the Bank's security interest continued in the identifiable proceeds from the sale of the liquor license; and (c) that a Wyoming liquor license constitutes "property" as defined in the Uniform Commercial Code. Accordingly, the Dis-

* Of the United States Court of Appeals for the District of Columbia Circuit, sitting by designation.

trict Court dismissed the complaint and the Trustee in Bankruptcy appeals.

The Wyoming liquor control statute provides that a retail liquor license issued thereunder "shall be a personal privilege, good for one year unless sooner revoked * * *" but also provides that, subject to certain conditions, a license may be assigned and trans-, ferred pursuant to an actual bona fide sale. It is further provided in the statute that, with the exceptions noted therein, "no license shall be transferred or sold * * * nor shall it be subject to attachment, garnishment or execution."

From these provisions the Trustee argues, as he did in the District Court, that a Wyoming liquor license may not be the subject of a lien and therefore may not be the subject of a security interest under the Uniform Commercial Code. He contends that the liquor control statute itself, and subsequent interpretation thereof by the Supreme Court of Wyoming,[1] "clearly preclude the incumbrance [sic] of a liquor license." It is noted that the statute does not in terms so provide: it reads that a license may not be transferred or sold except in the manner therein provided, "nor shall it be subject to attachment, garnishment or execution." Even though the liquor control act does not expressly say a license shall not be subject to mortgage or lien, and prohibits only the acquisition of a lien thereon by the affirmative action of a hostile creditor, there might be some force in the Trustee's argument that the legislature intended to forbid any lien upon a license if the liquor control statute stood alone.

But it does not stand alone. After its enactment, the Wyoming legislature adopted the Uniform Commercial Code, effective as of January 1, 1962, which provides that a security interest in favor of a creditor may be created in intangibles without any transfer or assign-

ment thereof. In this respect, the Code broadened previously existing law and made subject to security interests forms of property which theretofore could not be placed in lien. Section 34-9-102, Wyoming Statutes 1957, as enacted in 1961, a part of the Code, provides that it applies to "any property," which it defines to include intangibles as well as tangibles:

"(1) * * * [T]his article [the Uniform Commercial Code] applies so far as concerns any personal property and fixtures within the jurisdiction of this state

"(a) to any transaction (regardless of its form) which is intended to create a security interest in personal property or fixtures including goods, documents, instruments, general intangibles, chattel paper, account or contract rights; and also

"(b) to any sale of accounts, contract rights or chattel paper.

"(2) This article applies to security interests created by contract including pledge, assignment, chattel mortgage, chattel trust, trust deed, factor's lien, equipment trust, conditional sale, trust receipt, other lien or title retention contract and lease or consignment intended as security. * * *"

Subsection 106 adds the following definition of "general intangibles," which makes it clear that the Code's applicability to "any property" was indeed intended to be without exception:

" * * * 'General Intangibles' means any personal property (including things in action) other than goods, accounts, contract rights, chattel papers, documents and instruments. * * *"

The question here turns upon whether a liquor license is "property" within the meaning of the Code. Although by the terms of the liquor control statute a li-

---

1. The appellant's reference is to Scranton v. Whitlock, decided by the Supreme Court of Wyoming in 1964, 389 P.2d 1015. This case merely holds invalid the transfer of a Wyoming liquor license without the consent of the governing body which issued it. It does not "preclude the incumbrance of a liquor license."

cense is a personal privilege which is not subject to attachment, garnishment or execution, it nevertheless has, under the liquor control law, an element of transferability, as under certain conditions it may be sold. As this case shows, it has a unique value. These characteristics stamp a liquor license as an item of property, even though it is statutorily said to be a personal privilege as well. Moreover, the license falls within the class of intangibles expressly enumerated in the Uniform Commercial Code as "property" within its scope. So, the Code permits the creation of a security interest in such a license. To that extent, then, it must be considered as overriding any inference that otherwise might be drawn from the liquor control act that an encumbrance may not be placed on a license issued thereunder.

The Trustee brands as inconsistent the actions of the District Court in adjudicating Rosenblum a bankrupt because he had preferred The American National Bank, and in then holding the payment to the Bank was not preferential. There was no appeal from the adjudication of bankruptcy; it is a *fait accompli*. Whether it was erroneous is immaterial here, for if it was, the Bank prevails, just as it has prevailed under the assumption that the adjudication of bankruptcy was correct.

The instrument which Rosenblum executed on May 4, 1966, though denominated an "Assignment," was merely an acknowledgment by him that he was unable to redeem the security interest and a consent that the Bank proceed to enforce that interest by arranging for him to sell the pledged property so the proceeds might be applied to the payment of his debts to the Bank.

The question whether the Bank's security interest attached to the proceeds of the sale is answered by the Uniform Commercial Code. Section 34–9–306(2),

Wyoming Statutes 1957, as enacted in 1961, reads as follows:

"(2) Except where this article otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof by the debtor unless his action was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor."

Cases such as this arise so infrequently that there is a paucity of authority on the problem presented here. We note, however, that in Paramount Finance Company v. United States, 379 F.2d 543 (1967), the United States Court of Appeals for the Sixth Circuit held valid a security interest in an Ohio liquor license created in accordance with the Uniform Commercial Code.[2] The court said:

"The taxpayer [licensee] could not transfer to the lender title to the liquor license issued to it by the Ohio Department of Liquor Control, Abraham v. Fioramonte, 158 Ohio St. 213 [6], 107 N.E.2d 321, 33 A.L.R.2d 1267 (1952), but the taxpayer could, and did, transfer to the lender a security interest in the liquor license, as constituting 'property' with unique value. Nelson v. Naranjo, 74 N.M. [502] 503, 395 P.2d 228 (1964). It is agreed by the litigants that this taxpayer's liquor license had pecuniary worth, so whether the license created a ' * * "property" right, is immaterial; for here * * * the tag "property" simply symbolizes the fact that courts enforce a claim which has pecuniary worth. * * *' Haelan Laboratories [,Inc.] v. Topps Chewing Gum, [Inc.,] 202 F.2d 866, 868 [1] (C.A. 2, 1953), cert. den. 346 U.S. 816, 74 S.Ct. 26, 98 L.Ed. 343."

2. Prior to Ohio's adoption of the Uniform Commercial Code, its courts had held that liquor permits were personal licenses and not property which could be mortgaged or seized under legal process.

We have no difficulty in concluding that the judgment of the District Court is correct and must be upheld.

Affirmed.