Earl R. JOHNSON, Sr., Earl R. Johnson, Jr., and Gladstone Hotel, Inc., Appellants (Defendants below),

Harry E. Stuckenhoff, Jack W. Perry, Center Street Investment Co. (Defendants below),

v.

Phyetta SMITH and C. Hampton Smith, Appellees (Plaintiffs below),

Wyoming National Bank of Casper, Appellee (Defendant below).

No. 3738.

Supreme Court of Wyoming.

June 2, 1969.

Rehearing Denied July 16, 1969.

R. R. Bostwick, of Murane, Bostwick, McDaniel & Scott, Casper, for appellants.

Ernest Wilkerson, William E. Barton, Brown, Drew, Apostolos, Barton & Massey, Casper, for appellees.

Before GRAY, C. J., and McINTYRE, PARKER, and McEWAN, JJ.

Mr. Justice PARKER delivered the opinion of the court.

The property around which this dispute revolves is the Gladstone Hotel, Casper, Wyoming, built about 1923 by C. A. Smith and his wife, Phyetta, and financed by the Massachusetts Mutual Life Insurance Company. In the 1930's the Smiths were joined in the operation of the hotel by their son, C. H. Smith, and following the repeal of prohibition added a bar and lounge to their enterprise. By 1948 the Smiths had paid off their indebtedness to Massachusetts Mutual but in 1954 planned a new addition and borrowed from Massachusetts Mutual $500,000, delivering to that company promissory note and securing the note by a real estate mortgage against the real estate and a chattel mortgage against the personalty and chattels. Later that same year the Smiths formed an operating corporation called Gladstone Hotel, Inc., which was to be the operating arm of the Smith venture. Into this corportaion was placed all chattels, supplies, etc., having to do with the hotel operation. From 1956 to the time of this suit the liquor license, previously in the Smiths' name, was issued annually to Gladstone Hotel, Inc. In 1961 the Smiths completed negotiations with Dr. Harry Stuckenhoff and Mr. Jack Perry to sell the hotel property to them. These buyers formed a corporation called Center Street Investment Company, which took title to the Gladstone Hotel property, executed a second real estate mortgage in favor of the Smiths, and assumed and

agreed to pay the Massachusetts Mutual indebtedness. On the day following its execution of the real estate mortgage for $310,000 in favor of the Smiths, the Center Street Investment Company conveyed the real property it had purchased from the Smiths to Dr. Stuckenhoff and Jack Perry. The corporation stock was transferred to these two individuals directly from the Smiths. In January 1965, Jack Perry quitclaimed his interest in the property and transferred his shares of stock to Dr. Stuckenhoff, who continued individually to make payments to the Smiths and Massachusetts Mutual. In December 1965 he conveyed his interest in the hotel property to Earl Johnson, Sr., and Earl Johnson, Jr., also signing over to them the capital stock of Gladstone Hotel, Inc. Following purchase by the Johnsons they issued a lease from themselves as owners of the real estate to Gladstone Hotel, Inc., to "continue operating * * * to carry on operating of the hotel." The Johnsons made payments to the Smiths until some time in 1966 and to Massachusetts Mutual through February 1967. On September 27, 1967, Massachusetts Mutual commenced foreclosure of their real estate mortgage by advertisement, and the action in the instant case was commenced October 4, 1967, by Phyetta and C. H. Smith's proceedings to foreclose their second mortgage. In their complaint they prayed that a receiver be appointed to assume the operation and control of the Gladstone Hotel property and to maintain it as a going business. Massachusetts Mutual, whom the Smiths had named as one of the defendants, also prayed for the appointment of a receiver. The court thereafter issued its order appointing a receiver and also entered summary judgment in favor of Dr. Stuckenhoff and Jack Perry (Center Street Investment Company not appearing).

Prior to the scheduled first mortgage foreclosure sale the Smiths secured a loan from the Wyoming National Bank and the total amount of the indebtedness was paid to Massachusetts Mutual. That company endorsed the note without recourse to the Wyoming National Bank under date of October 30, 1967, and also on that date assigned to the bank the real and chattel mortgages, that bank then being substituted as a party defendant for Massachusetts Mutual. Thereafter various motions were made and hearings had. The Johnsons were denied dissolution of the receivership and the Smiths were put into possession of the hotel for the purpose of its operation under the general umbrella of the receivership. On December 8, 1967, the court granted the Smiths' motion for summary judgment and decree of foreclosure as to the second mortgage and C. H. Smith bid in for the principal amount of that mortgage. The final hearing was conducted in March 1968 pursuant to the Johnsons' and the corporation's motion:

"1. That a full and complete hearing of entitlement be held whereby all matters in regard to chattels within the Gladstone Hotel property can be determined with respect to ownership thereof and with respect to mortgage claims thereon, if any.

"2. The determination of whether or not the Wyoming National Bank of Casper who is present holder of a real property mortgage and a chattel mortgage by assignment, which mortgage is not now in default and on which no action is pending with respect thereto, has any grounds for complaint as alleged by plaintiffs.

"3. For an order authorizing these defendants to move from premises instanter all chattels not within the purview of the existing mortgage.

"4. For an order determining whether or not the existing chattel mortgage is in default * * *,"

the Wyoming National Bank's motion:

" * * * for an order, after hearing, declaring, and determining the assets, properties, rights and appurtenances which are covered by and are subject to the liens of that certain mortgage dated April 23, 1954, between Charles A. Smith, Phyetta Smith, C. Hampton

Smith and Dorothy E. Smith * * *, as mortgagors, and Massachusetts Mutual Life Insurance Company * * *, as mortgagee, recorded in the office of the County Clerk, Natrona County, State of Wyoming on April 29, 1954, in Book 146 of Mortgages at page 193, * * * and that certain even dated chattel mortgage between the Smiths, as mortgagors, and Massachusetts, as mortgagee, recorded in the office of said County Clerk on April 29, 1954, in Book 13 of Chattel Mortgages at page 477 * * *,"

and the court's direction that "evidence and argument be presented as to the status of the liquor license * * * the subject of previous proceedings in this cause."

The court found generally in favor of the security holders, C. H. Smith, Phyetta Smith, and the Wyoming National Bank; against Earl R. Johnson, Sr., Earl R. Johnson, Jr., and Gladstone Hotel, Inc.; and, inter alia, that under the provisions of the real estate and chattel mortgages all personal property in or on the Gladstone Hotel buildings or grounds was subject to the lien of the real and chattel mortgages with the exception of food and liquor inventories, that the liquor license was appurtenant to the hotel property, historically having always passed through transfer of title or by security agreement with the property into and out of the hands of mesne title holders or security holders, that the preservation of the liquor license in the premises was necessary to prevent invasion and destruction of the security interest holder's rights in its security as afforded by the real and chattel mortgages, that the first real estate mortgage and the chattel mortgage owned by the Wyoming National Bank and the promissory note which the mortgages secured were, as to the then title holders of the property, in default, and that the second real estate mortgage held by the Smiths and the promissory note which it secured, were as to the then title holders of the property, in default, and

that, as to the second real estate mortgage, sale of the real property under right of foreclosure in said mortgage occurred January 11, 1968, at which time the property was bid "on" by the Smiths for the principal amount of their second mortgage.

From this order the Johnsons and Gladstone Hotel, Inc., have appealed, arguing:[1]

1. The receiver was improperly appointed.

2. The complaint as originally filed was for the purpose of foreclosing a second mortgage held by the Smiths and given by the Center Street Investment Company, which mortgage did not contain a provision for the appointment of a receiver.

3. The Massachusetts Mutual Life Insurance Company had commenced foreclosure by advertisement and was joined in the case as a party defendant and the Smiths relied upon the provisions in this real property mortgage for the appointment of the receiver.

4. During the course of the receivership, the Smiths paid off the Massachusetts Mutual mortgage by borrowing funds from the Wyoming National Bank and then failed to release the mortgage, and this mortgage has been assigned to the Wyoming National Bank.

5. Various items of property were improperly made subject to the control of the receiver:

a. Real property mortgage contained a provision for the appointment of a receiver during foreclosure.

b. The chattel mortgage contained no provision for the appointment of a receiver.

c. The chattel mortgage had a list of equipment appended to it and considerable property not contained

---

in the appendage nor within the general scope of replacement has been forced under the wing of the receiver.

6. The corporate property was not subject to the debt and at the time of the receivership action, the corporation assets were owned by a bona fide purchaser without notice of any encumbrance on the corporate property nor of any claims against the assets and there were none of record on which to put the present owners on notice.

7. The Smiths transferred personal property in the hotel to the Gladstone Hotel, Inc., a corporation, free and clear of any indebtedness and placed no mortgage of record as notice to subsequent purchasers of the assets of the corporation.

8. There is no debtor-creditor relationship between Gladstone Hotel, Inc., a corporation, and Phyetta Smith, C. Hampton Smith, Massachusetts Mutual, nor the Wyoming National Bank.

9. Liquor License No. 10, issued by the City of Casper, has been made subject to the mortgage per se and it was not listed as an item of security at the time the mortgage was given nor at any time thereafter.

10. Liquor License No. 10 is issued to and held by Gladstone Hotel, Inc., a separate legal entity not privy to the mortgage or either of them and the owner of some of the personal property involved herein. The court invaded the corporate structure without authority and without jurisdiction and subjected Liquor License No. 10 to the receiver as an item to be used in connection with security for the debt of Smiths to which the corporation was not a party and in addition subjected various items of personal property owned by the corporation to the receiver's control as security for the debt.

■ Appellants' points one through four will be considered together. At the threshold, we should perhaps observe that although appellants make an undeveloped statement that the second mortgage held by the Smiths contained no provision for the appointment of a receiver, they do not undertake to say that such is a prerequisite of a receivership under § 1-990, W.S. 1957, and we deem the allegations of the complaint as later substantiated by evidence sufficient to justify the court's appointment of the receiver under the provisions of the statute. Basically, their contention against the propriety of the receivership is that under the precedent of Arnold v. Nichols, 25 Wyo. 458, 172 P. 335, "Smith purchased his own mortgage and then attempted to assign it as security to the Wyoming National Bank for the loan which they gave him with which to purchase it. He has, therefore, bought his own mortgage. He breached the warranty which he gave on the deed to Center Street Investment Company and which was followed down to the present owners. He, therefore, holds it for the benefit of the grantee under the deed."

■ Arnold v. Nichols, supra, concerns itself with the rule stated in 2 Jones, Mortgages § 867 (7 ed.):

"When one who has conveyed land with warranty, which is subject to a mortgage, whether made by him or by another, afterwards takes an assignment of such mortgage, he holds it for the benefit of the person to whom he has granted the land, and the mortgage is in fact discharged by coming into his hands. Even if he should assign it to one who in good faith pays full consideration for it, the purchaser would acquire no lien upon the land."

Evidently appellants overlook the fact that the Smiths did not warrant against the encumbrance to Massachusetts Mutual. The mentioned rule has no application whatever in this case since the deed to the Center Street Investment Company expressly recited the existence of the mortgage in favor of

Massachusetts Mutual as did the deed from Center Street Investment Company to Dr. Stuckenhoff and Jack Perry, and the deed from Dr. Stuckenhoff to the Johnsons stated that it was subject to all encumbrances of record. Accordingly, the contention that the receiver was improperly appointed because Smith bought his own mortgage and held it for the benefit of the grantee under the deed is wholly without merit.

Concerning points 5 through 8, appellants maintain that the district court disregarded the corporate structure of Gladstone Hotel, Inc., when it held that all the property which that corporation purchased is subject to a lien of a mortgage—to which the corporation is not a party—and they argue that a "receiver cannot be appointed to take charge of property which is not involved in litigation directly and not merely incidentally"; that a general receivership is available only where all of one's property is in litigation and a special receivership is available only with respect to the particular property in litigation; that, therefore, a receiver in a foreclosure action is not a receiver of any property except that covered by the mortgage; and that the receivership appointed by the court should have been restricted solely to the real property since there was no indication that one was justified with respect to personal property under the separate chattel mortgage. They also refer to the court's finding that the first real estate mortgage, the chattel mortgage, and the promissory note, which these mortgages secured, were in default as "unusual" in view of the testimony establishing that Smith paid off the note, claiming that under § 34–33, W.S. 1957, the note should have been released. However, in their criticism of this finding they again rely on Arnold v. Nichols, supra, which as we have previously indicated has no application to the instant situation.

The chattel mortgage provided, inter alia, that the Smiths:

" * * * grant, bargain, sell, and transfer unto * * * Massachusetts Mutual Life Insurance Company * * * all of the property, goods, and chattels listed on Schedule A hereto annexed and entitled 'List of fixtures, furnishings, and equipment, The New Gladstone Hotel, Casper, Wyoming, March 1954,' together with any and all renewals or replacements of or additions to any such property, goods and chattels at any time hereafter made, the said property to be and remain in the County of Natrona * * *.

\* \* \* \* \* \*

"IT IS expressly understood and agreed by and between the parties hereto that this instrument is intended for security for the payment of money in the sum of Five Hundred Thousand Dollars and interest as aforesaid which sum and interest is also secured by said real estate mortgage, and at the option of said Life Insurance Company, in the event of any breach or default whatsoever, both such mortgages may be foreclosed in the same sale and the property, goods and chattels hereinbefore described may be sold in bulk as one lot, together with said real estate, for a lump sum bid covering both the real estate and personal property. \* \* \* "

The real estate mortgage provided:

" * * * in case of any default whereby the right of foreclosure occurs hereunder, the Mortgagee shall at once become entitled to exclusive possession, use, and enjoyment of all property above described, and to all rents, issues and profits thereof, from the accruing of such right and during the pendency of foreclosure proceedings and the period of redemption, and such possession, rents, issues, and profits shall at once be delivered to the Mortgagee on request, \* \* \* and the Mortgagee shall be entitled to a receiver for said property and all rents, issues and profits thereof, after any such default, including the time covered by foreclosure proceedings and the period of redemption \* \* \*."

In view of the provisions of these mortgages given by the Smiths to the insurance company, the filing of the instruments

prior to the transfer of the chattels by the Smiths to Gladstone Hotel, Inc., and the Johnsons' knowledge of these transactions, we fail to perceive any validity in appellants' position that the receivership should have been restricted to the real property and that when the trial court held all the property was subject to a lien it disregarded the corporate structure of Gladstone Hotel, Inc. Neither cogent argument nor authority is presented to show why the lien would not have followed these chattels. As a general rule, a valid lien created on real or personal property is enforceable against the property in the hands of any person who subsequently acquires it except a bona fide purchaser for value without notice of lien. Cody Finance Co. v. Leggett, D.Wyo., 116 F.Supp. 700, 705 (affirmed Reconstruction Finance Corp. v. Cody Finance Co., 10 Cir., 214 F.2d 695); 53 C.J.S. Liens § 13.

Although counsel for appellants argued to this court that when the Johnsons bought the corporation from Dr. Stuckenhoff separate moneys were transferred for the interest in the corporation, the record reflects the contrary.

In appellants' points 9 and 10, they urge that the liquor license was an item of ownership by the corporation, which had been the continuous holder of the license since April 1, 1956, even though the corporate stock ownership changed from Smiths to Stuckenhoff and Perry to the Johnsons and that the district court in passing on the question of the liquor license seemed to imply that it was an economic unit in the hotel and an item under consideration as security when the mortgage was originally given by Smith to Massachusetts Mutual. Appellants say that hindsight makes it obvious that the liquor license was the only economic value in the Gladstone Hotel operation, but they insist that it was not mentioned as security and argue that if the parties had attempted to subject it to the mortgage it would have been held for naught since § 12–13, W.S.1957, provides that a license for the sale of alcoholic beverages shall not be subject to attachment, garnishment, or execution, the philosophy of such being that only the person to whom the license was issued shall operate thereunder since it is a personal privilege. As authority for their position that it is not such a right that can be transferred to the dominion of a receiver they cite Scranton v. Whitlock, Wyo., 389 P.2d 1015, and Hill v. Hamilton, Wyo., 368 P.2d 957.

We do not find the cases upon which appellants rely particularly helpful. The Scranton case held invalid the transferring of a Wyoming liquor license without the consent of the governing body, which had issued it, and Hill v. Hamilton reiterated the necessity of approval of the licensing authority in assignments and transfers of a liquor license. Although under § 12–13 a liquor license may not be subjected to "attachment, garnishment or execution," there is no direct prohibition against its being subject to a lien.

Since the real estate mortgage (executed prior to the incorporation of Gladstone Hotel, Inc.) of which the Johnsons had notice before they purchased the property encumbered "all other rights thereunto belonging, or in anywise now or hereafter appertaining," and the schedule attached to the chattel mortgage listed in addition to various bar equipment "all other items necessary or useful to the practical and successful operation of a hotel," we are unimpressed with appellants' argument that the liquor license was not a listed item of security and therefore should not have been subjected to the receivership. True, we have often said that a liquor license is a privilege, Whitesides v. Council of City of Cheyenne, 78 Wyo. 80, 319 P.2d 520, 525; Scranton v. Whitlock, 368 P.2d at 1018, and indeed § 12–13 expressly states that "A license shall be a personal privilege," but such limiting statement applies only to the situation between the licensee and the State. Hooper v. Duncan, 95 Ariz. 305, 389 P.2d 706, 708. Section 12–13 also makes a provision for transfers and assignments under certain expressed conditions and unquestionably the liquor license in the instant controversy was a valuable asset. As observed in Bogus v. American

National Bank of Cheyenne, Wyoming, 10 Cir., 401 F.2d 458, 460–461:

" * * * Although by the terms of the liquor control statute a license is a personal privilege which is not subject to attachment, garnishment or execution, it nevertheless has, under the liquor control law, an element of transferability, as under certain conditions it may be sold. As this case shows, it has a unique value. These characteristics stamp a' liquor license as an item of property, even though it is statutorily said to be a personal privilege as well. * * * "

 In the present situation as between the mortgagor and the mortgagee, we deem the liquor license within the description of the property mortgaged, which upon foreclosure and sale under the restrictions of § 12–13 would give the purchaser the "first chance" or opportunity to apply to the licensing authority for continuation or renewal. Under this rationale, the placing of the license by the trial court under the control of the receiver was not error.

 After the filing of the suit in this case when steps were taken to transfer the liquor license from the Gladstone premises, the court by order prevented the Johnsons and Gladstone Hotel, Inc., from endeavoring to obtain such a transfer. Although appellants now maintain that the procedure was bad in that the trial court's order was entered, not in the formal proceedings for injunction under Rule 65, W.R.C.P., but on a petition of the receiver for a stay, and argue further the substance of this matter again invaded the corporate structure of Gladstone Hotel, Inc., we see no occasion to examine the procedural steps in depth. Even were we to agree that action under Rule 65 would have been desirable, there is no showing that appellants' substantial rights were thus affected. As to the alleged invasion of the corporate structure, we have already pointed out the fallacy of appellants' position.

From what we have said, it follows that the bases for the appeal are without merit, and accordingly, the order of the trial court is affirmed.

Affirmed.

GRAY, Chief Justice (dissenting).

I have no disagreement with the general basic concept which the majority appears to have followed that a trial court in an action for the foreclosure of a mortgage may, in the exercise of its broad discretion and upon a proper showing, appoint a receiver to take possession of the mortgaged property and operate it as a going concern in the interest of the parties involved. Annotation 82 A.L.R.2d 1075, et sequitur. Neither do I question the general authority of a trial court under appropriate circumstances to place a receiver in possession of the mortgaged property when a party to the foreclosure action refuses to deliver up possession. Gloyd v. Rutherford, 62 Wash.2d 59, 380 P.2d 867, 869. I do not agree, however, that the concept can be given unlimited sway under the circumstances of this case.

Primarily I am unable to accept the holding of the majority that the district court did not abuse its discretion and exceed its authority when it attempted to empower the receiver, among other things, to take possession of the liquor license, together with the business authorized thereby, and without approval of the licensing authority to turn the operation of that business over to C. Hampton Smith, a plaintiff in the action to foreclose the second mortgage. Apparently this was done on the theory that in some fashion or other the liquor license and business had become attached to the real property involved or that it was a "chattel" within the terms of Massachusetts Mutual's chattel mortgage. Incidentally, at the time the receiver was appointed no effort was being made by Massachusetts Mutual to foreclose the chattel mortgage and no cross-claim had been filed by it against Gladstone Hotel, Inc., seeking foreclosure of the chattel mortgage. All that had been done was to notify the Johnsons, as individuals, and the hotel corporation that it had "elected to take immediate and full possession" of the chat-

tels and demanded prompt delivery of possession.

I would hold that the orders of the trial court relating to and involving the liquor license and the carrying on of that business under the receivership were complete nullities. Certainly the theory that the liquor license became attached to the real estate is wholly untenable. Under the provisions of § 12–13, W.S.1957, the holder of a liquor license may at any time upon approval of the licensing authority transfer and renew the license "on different premises on the same basis as an original application." It is conceded by the Smiths, and the record is beyond dispute in this respect, that the hotel corporation was the owner of the license at all times herein. As owner, the corporation had the right at any time upon approval of the licensing authority to transfer the license to other premises, and this notwithstanding the terms of the lease. If the lease agreement were breached, the only remedy available to the lessor would be an action for damages. To hold otherwise is to place an instrument of oppression in the hands of the owner of the licensed premises.

With respect to the holding that Massachusetts Mutual obtained a security interest in the liquor license, it is my view that such holding is not only contrary to law, it is contrary to the uncontradicted facts disclosed by the record. Bear in mind that although the hotel corporation took the personal property subject to the mortgage, it did not assume payment of the debts secured by the Smiths' mortgage or the mortgages of Massachusetts Mutual. Consequently there was no debtor-creditor relationship between the hotel corporation and the other parties, and at the time the Johnsons acquired all of the capital stock of the corporation they obligated themselves to pay to Stuckenhoff the sum of $60,000 for the purchase of that stock. I mention this simply to demonstrate that the corporation was something more than a mere "paper transaction" and the equities of the Johnsons must be considered along with the equities of the Smiths.

Turning now to the right of a licenseholder, as a matter of law, to transfer a valid security interest in a liquor license, the pertinent provisions of § 12–13, W.S. 1957, provide that "a license shall be a personal privilege, good for one year unless sooner revoked." Then, after making provisions for transfers by an actual bona fide sale in good faith upon approval of the licensing authorities, the statute goes on to provide, ."except as above provided, no license shall be transferred or sold, nor shall it be used for any place not described in the license at the time of issuance, nor shall it be subject to attachment, garnishment or execution." Early in the administration of the statutes regulating the sale of intoxicating liquors, and until this case and the recent case of Bogus v. American National Bank of Cheyenne, Wyoming, 10 Cir., 401 F.2d 458, which involved the Uniform Commercial Code, which, of course, is not involved here, it was common knowledge that no transfer of an interest in a liquor license could be made without approval of the licensing authority and the granting of a security interest in a license was regarded as a transfer subject to the statute. That is well demonstrated by the positions taken by counsel for all of the parties at the time the receiver was appointed. Mr. Bostwick, a practicing attorney in Wyoming for many years and attorney for the appellants, vigorously advanced this proposition to the trial court. Mr. Wilkerson, attorney for the Smiths and also an attorney of longstanding of the Bar and experienced in such matters, at the time of the initial hearing stated to the court, "It's true that you can't mortgage a liquor license. There is no question about that, and that's why it's not in here. The draftsman of these instruments was very thorough. And I agree with counsel that you cannot mortgage a liquor license." In fairness it can be said that he now has some second thoughts in the matter based upon a theory that the liquor license was an integral part of the operation of the hotel and it was contemplated that it was in-

tended to remain such by the Smiths. The facts, however, lend no support to that argument. Mr. Wilson, also an attorney of longstanding and experience and representing Massachusetts Mutual at the initial hearing, according to the trial court, at no time contended that the liquor license was covered by the mortgage. To me it is clear that such a construction was in keeping with the purpose and the intent of the statute to prevent transfers through operation of general law.

Turning now to the finding of the trial court that the chattel mortgage of Massachusetts Mutual embraced the liquor license within its terms, I am of the opinion that such finding is not supported by the evidence and in fact is contrary thereto. All parties agreed that the liquor license was about the only valuable asset of the hotel corporation, and it was so recognized by the Smiths and the bank in their negotiations for the loan that enabled the Smiths to pay off Massachusetts Mutual. Certainly the liquor license had value also at the time it was transferred to the corporation. Significantly the schedule attached to the chattel mortgage covered most of the furnishings, glassware, equipment and miscellanous chattels used in connection with the business, but it did not include the most valuable asset of all, the liquor license, and did not include the liquor inventory. To say that the license nevertheless was embraced in the language "all other items necessary or useful to the practical and successful operation of the hotel" is untenable, particularly when such language is attempted to be enforced against the hotel corporation through constructive notice. Aside from the doctrine of ejusdem generis, if Massachusetts Mutual believed for one moment at the time it was taking security for its loan that a liquor license could be included, certainly one would expect to find express language accomplishing that result. A further indication that Massachusetts Mutual laid no claim to the liquor license is the fact that so far as the record shows it did not, subsequent to the amendment of the statute in 1961, disclose an interest in the license which the statute required. The particular provision provides that no person "shall have any interest, directly or indirectly, in a liquor license unless he shall sign and verify the application for the license." Ch. 172, § 2(B), S.L. of Wyoming, 1961 (§ 12–9(B), W.S.1957, 1967 Cum.Supp.).

The rule is fundamental that in a mortgage foreclosure the court is without authority to appoint a receiver for anything more than the property covered by the mortgage, 15 Am.Jur.2d Chattel Mortgages, § 233, p. 393; 14 C.J.S. Chattel Mortgages § 409, p. 1063; and inasmuch as the liquor license was not subject to either the real estate mortgages or the chattel mortgage, the court erred in that respect.

I am further of the opinion that the order of the trial court dated May 3, 1968, insofar as it undertook to exercise jurisdiction as among the parties "of the right to apply for renewal or extension" of the liquor license and to sell the same as a part of the mortgaged real property, was likewise a nullity. As I have shown, the court had no jurisdiction over the license at any time. While the order in that respect is couched in careful language, the effect of the order is to transfer to the purchaser of the real estate at the foreclosure sale based upon the second mortgage the personal preferential right and privilege of the hotel corporation to apply for renewal of its license. In this connection I should mention that in order to accomplish that result the trial court previously—and again without authority—had restrained Gladstone Hotel, Inc., from proceeding with its application before the licensing authorities to transfer the license to other premises after it became apparent to its officers that the lease on the licensed premises would not be renewed.

There are other pronouncements made in the majority opinion with which I also

disagree, but sufficient has been shown that to me requires reversal of the trial court's order and judgment from which this appeal is taken.