Dale W. **STERNER** and E. Arlene Sterner, Appellants (Defendants),

v.

**UNITED STATES of America,** Appellee (Plaintiff).

No. 88–99.

Supreme Court of Wyoming.

May 26, 1989.

---

Susan Maher Guthrie, Green River, and Lee E. Karavitis, Casper, for appellants.

William S. Rose, Jr., Asst. Atty. Gen. for U.S., Gary R. Allen, David English Carmack, and Thomas R. Lamons, Tax Division, Dept. of Justice, Washington, D.C.; and Richard Allen Stacy, U.S. Atty., for appellee.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY, and GOLDEN, JJ.

THOMAS, Justice.

The question to be resolved in this case is whether Wyoming law limits a perfected lien imposed upon a local liquor license to the period for which the license was issued. The United States District Court ruled that a federal tax lien for unpaid income taxes owed by a license transferor attached to and continued in a liquor license after it was transferred by the taxpayer and after the license had been renewed by the transferee. The transfer was by assignment to a prior owner pursuant to an escrow arrangement made upon the sale of the liquor business, which was the occasion of the initial transfer of the license to the taxpayer. The United States District Court ordered foreclosure and sale of the renewal license subject to the approval of the successful bidder by the appropriate licensing authority. The license transferee appealed to the United States Court of Appeals which then certified to this court questions of law pursuant to Sections 1–13–104 to –107, W.S.1977, the Federal Court State Law Certificate Procedure Act[1], and Rules 11.01 through 11.07, W.R.

---

1. The Federal Court State Law Certificate Procedure Act, §§ 1–13–104 to –107, W.S.1977, is named in § 1–13–104, W.S.1977. Definitions are provided in § 1–13–105, W.S.1977, which include the courts of appeal in the term "federal court" and specify that the "supreme court" is the supreme court of Wyoming. Section 1–13–106, W.S.1977, provides:

   "The supreme court may answer questions of law certified to it by a federal court when requested by the certifying court if there are involved in any proceeding before the federal court questions of law of this state which may be determinative of the cause then pending in the federal court, and as to which it appears to the federal court there is no controlling precedent in the existing decisions of the supreme court."

   Section 1–13–107, W.S.1977, authorizes the supreme court to adopt rules of practice and procedure to implement or facilitate the utilization of the procedure.

A.P.[2] We conclude that Wyoming law, in the absence of some different contractual provision, would require that the assertion and implementation of the rights of a lien holder would be limited by the period for which the license was granted. It is our view that the federal tax lien expired with the end of the term of the license issued to the taxpayer.

In its order, the United States Court of Appeals submitted the following certified questions of Wyoming law to this court:

> "Under the Wyoming liquor licensing system, does the holder of a license have a right to expect that the license will be renewed from year to year if the licensee continues to meet the statutory requirements for licensure?
>
> "Will a perfected lien upon a liquor license terminate at the end of the license year, or will the lien automatically follow and attach to the ensuing new or renewed license without affirmative action by the lienor?"

Our answer to the first of the above questions is "Yes", as the question is qualified by the United States Court of Appeals. We will expand briefly upon that answer by way of comment. Our answer to the second question, which is in two parts, is "Yes" to the first part and "No" to the second part. It is in this context that we recognize the distinction between contractual features that may result in the reattachment of a lien after the end of the license year and an involuntary lien which cannot encompass such features.

In accordance with Rule 11.03, W.R.A.P., the United States Court of Appeals, in its order submitting the questions of state law, articulated the facts relevant to the questions certified as follows:

> "The facts of this case are stated in the district court opinion. *See United States v. Skirko,* 631 F.Supp. 790 (D.Wyo.1985). Dale W. Sterner and E. Arlene Sterner (Sterners) operated the Hideaway Bar and Package Store in Mills, Wyoming.

As part of the business, they were owners and holders of Liquor License Number Two. On November 12, 1980, the Sterners entered into a sale and escrow agreement with Marie Forsberg and Bull Pen Restaurant, Inc., for the sale of the business and the liquor license. The agreement provided that upon default, Sterners could terminate the agreement and retake possession of the property and liquor license. A reassignment of the liquor license to Sterners was executed and placed in escrow with the other agreement documents. In accordance with Wyoming law, the liquor license was transferred to Bull Pen Restaurant, Inc.

"On May 12, 1981, Marie Forsberg and Bull Pen Restaurant, Inc., assigned their interest in the sale and escrow agreement to Deanne F. Berrett, who is also known as Deanne F. Skirko (Skirko). Skirko agreed to comply with all of the provisions in the agreement. Skirko also executed a reassignment of the liquor license to Sterners, which was placed in escrow. Pursuant to Wyoming law, the liquor license was transferred to Skirko.

"Subsequently, Skirko defaulted in her payments to Sterners. Sterners notified Skirko by certified mail dated January 9, 1984, that she was in default. When Skirko did not cure her default, the Sterners terminated the agreement by removing the documents from escrow on May 9, 1984.

"Previously, on July 19, 1982, the Internal Revenue Service (I.R.S.) had assessed Skirko for unpaid 1980 federal income taxes. On March 2, 1983, the I.R.S. filed with the Clerk and Recorder of Natrona County, Wyoming, a notice of federal tax lien against Skirko for the assessment of unpaid federal income taxes. The I.R.S. served a levy on Skirko to collect her tax liabilities and any statutory additions. On May 9, 1984, the same day the Ster-

---

**2.** Rules 11.01 through 11.07, W.R.A.P., are the procedural rules adopted to implement the Federal Court State Law Certificate Procedure Act. Of particular significance is Rule 11.03 which provides:

"A certification order shall set forth the question of law to be answered; and a statement of all facts relevant to the questions certified and showing fully the nature of the controversy in which the questions arose."

ners terminated the sales agreement by removing documents from escrow, the I.R.S. seized the liquor license, which was to expire on September 6, 1984.

"On May 11, 1984, Sterners filed an application for transfer of the liquor license from Skirko to themselves. Sterners filed Skirko's reassignment of the liquor license with the Mills Town Clerk on May 14, 1984. On July 3, 1984, Sterners filed an application for renewal of the liquor license. The Mills Town Council approved renewal of the liquor license to the Sterners on September 5, 1984. The Sterners paid the license fee of $1,500 to the Mills Town Clerk on September 6, 1984.

"On December 11, 1984, the United States (Government) commenced this action seeking, among other things, judgment against the Sterners to quiet title to and to foreclose the federal tax lien on the liquor license. One issue before the district court was whether the Government forfeited its interest in the liquor license by failing to take action before expiration of the one-year term of the liquor license. The district court concluded the tax lien did not expire when the one-year term for the liquor license expired, because the Sterners merely renewed the liquor license and did not receive a new liquor license."

■ Our affirmative response to the first question posed by the United States Court of Appeals rests upon a Wyoming statute and this court's interpretation of its effect. Section 12–4–104, W.S.1977, provides in pertinent part:

"(c) The owner and holder of an expired liquor license or permit or one due for expiration has a preference right to a new license for the same location. After the required notice and a public hearing, each application claiming renewal preference shall be promptly considered and acted upon by the licensing authority."

In subsection (e), the same statute authorizes judicial review of an adverse decision by the licensing authority on an application for a renewal license. The statute specifically forecloses an applicant for a new li-

cense from judicial review. The legitimacy of the expectation of renewal on the part of the holder of the license is perhaps most definitively captured in *City of Evanston v. Whirl Inn, Inc.*, 647 P.2d 1378 (Wyo. 1982). In that case, this court held, in substance, that the action of the licensing authority in denying a renewal was limited to determining, by virtue of a trial de novo, whether the decision of the licensing authority was supported by substantial evidence, was arbitrary or capricious, was beyond the power of the licensing authority to make, or violated some constitutional right of the license holder. Consequently, interpreting the question posed by the court of appeals to mean that the licensee who meets the statutory requirements for licensure could attack the determination of the licensing authority on the foregoing grounds, the licensee would have the right to expect that the license would be renewed. We do note, however, that the licensing authority "may refuse to renew, in the presence of proper facts and proceedings, because the license holder's privilege is not irrevocably vested but it is only a privilege." *Whirl Inn*, 647 P.2d at 1387.

■ Turning then to the second question certified by the United States Court of Appeals, we confess that it is difficult to address under state law. The Wyoming legislature specifically has foreclosed involuntary liens in § 12–4–604, W.S.1977, which provides:

"No license or permit shall be transferred or sold except as provided by W.S. 12–4–601 through 12–4–603, used for any place not described in the license or permit at the time of issuance or subject to attachment, garnishment or execution."

This court has had no occasion to consider, for that reason, whether a perfected involuntary lien upon a liquor license would terminate at the end of the license year. We acknowledge the proposition that federal law controls whether the federal tax lien will attach to a Wyoming liquor license, despite the state statute protecting such licenses from attachment, garnishment, or execution. *United States v. National Bank of Commerce*, 472 U.S. 713, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985); *United States*

*v. Rodgers,* 461 U.S. 677, 103 S.Ct. 2132, 76 L.Ed.2d 236 (1983); *United States v. Bess,* 357 U.S. 51, 78 S.Ct. 1054, 2 L.Ed.2d 1135 (1958); *United States v. Mitchell,* 403 U.S. 190, 91 S.Ct. 1763, 29 L.Ed.2d 406 (1971). We understand that the role of this court is to define the nature of any interest a taxpayer may have in a Wyoming liquor license. *Commerce.* See *Aquilino v. United States,* 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960); *United States v. Durham Lumber Co.,* 363 U.S. 522, 80 S.Ct. 1282, 4 L.Ed.2d 1371 (1960); *Commissioner v. Stern,* 357 U.S. 39, 78 S.Ct. 1047, 2 L.Ed.2d 1126 (1958). We also recognize the cases arising in Wyoming which have declared that a liquor license has value as property within the state. *Bogus v. American National Bank of Cheyenne, Wyoming,* 401 F.2d 458 (10th Cir.1968); *Johnson v. Smith,* 455 P.2d 244 (Wyo.1969). See *Gladstone Hotel, Inc. v. Smith,* 487 P.2d 329 (Wyo.1971); *Hill v. Hamilton,* 368 P.2d 957 (Wyo.1962).

Our understanding of these cases is that, in each instance, the concern of the court was with the identification of a property right which could be transferred or, alternatively, used as security for the payment of contractual obligations, usually incurred in connection with the acquisition of a liquor business. In none of those cases was the court confronted with an issue of identifying the temporal existence of such a property right. Assuming that the legislature meant what it said when it adopted § 12–4–106(a), W.S.1977,[3] there would exist no inherent barrier to parties contracting for the substitution of successive licenses in connection with a secured transaction, or perhaps even contracting for the transfer of some future license. We do not find this proposition specifically addressed in the prior cases.

The only precedent from this court which is apt, even by analogy, in the context of the question posed is *State ex rel. Schwartz v. Jones,* 61 Wyo. 350, 157 P.2d 993 (1945), in which this court dismissed, under the concept of mootness, an appeal from the dismissal of a petition for writ of mandamus that sought to require the City of Cheyenne to grant a liquor license. The premise for the dismissal was that such a license expires at the end of a year and, since it appeared impossible for any judgment to be efficacious prior to the end of the period for which the liquor license had been sought, the case had to be dismissed under the concept of mootness. The conclusion to be drawn is that there was no property for the judgment of the court to affect after the expiration of the license term. The logical application of *Schwartz* results in a conclusion that the property right to which the federal tax lien attached expired at the end of the license period which apparently occurred at midnight separating September 5, 1984 from September 6, 1984.

While we are conscious of a claim that this proposition is inconsistent with prior authority, we remind the reader that we cannot be certain that the prior cases did not involve contractual provisions satisfying the results and, in any event, this particular issue was not there present. We are sensitive of our reluctance to issue any advisory opinion, and we do not do so here but, given the emergence of this particular issue, it would appear prudent for those who may be contemplating some transaction relating to a liquor license to be sure to provide, by contract between the parties, that the contractual rights will relate to any license issued in the future as well as to the one in existence at the time of the contract.

While authority on point is not available, our conclusion in this regard is consistent with what can be discerned as a clearly articulated state policy relative to liquor licenses. As we have noted, the statute provides for no involuntary liens under state law. The purpose of the local licens-

---

**3.** Section 12–4–106(a), W.S.1977, provides:

"A license or permit is considered a personal privilege to the holder and the term of the license or permit is for one (1) year unless sooner revoked. When a valid license or permit is determined to be part of the estate of a deceased holder, the administrator or executor of the estate may exercise the privilege of the deceased under the license or permit until the expiration of the license or permit."

ing provisions found in §§ 12–4–101 to –702, W.S.1977, is the exercise of regulatory control by licensing authorities over those who engage in the retail sale of intoxicating liquors in Wyoming. A part of that control is to limit the period for which a license may be in existence and to periodically require licensees to justify their continuing privilege to engage in the business of retail liquor sales. Thus, a limitation upon the right to transfer, voluntarily or involuntarily, to the particular license in existence at the time of the contract, or upon the attachment of a lien, is consistent with state policy. The recognition of contractual provisions relating to future acquired property, while perhaps an exception to that policy, certainly is a feature which the United States cannot claim to be present in connection with the attachment of an involuntary lien.

In addition, there is a pragmatic feature of the limitation that we impose. The role of the licensing authority under the Wyoming statutes is regulatory in nature. The licensing authorities are not necessarily intended or equipped to adjudicate contests with respect to ownership or priority of rights in licenses. A rule which provides that the property right continues only for the license period substantially ameliorates any such responsibilities that otherwise might be thrust upon licensing authorities. The practical effect of the rule justifies its articulation as a matter of law.

Based upon an analogy from precedent, public policy, and the pragmatic impact of the rule, our answer to the second question posed is that a perfected lien upon a liquor license will terminate at the end of the license year, in the absence of some contractual provision which permits the substitution of future property, and the lien will not automatically follow and attach to the ensuing new or renewed license without some affirmative action by the lienor. We perceive the effect of this rule, in an instance such as this, as requiring the United States to either achieve the foreclosure of its lien prior to the end of the license period or to relevy upon any new license acquired by the taxpayer. In many instances, that would pose no problem but, in this instance where the holder of the license in the new term is a different person from the taxpayer, that well may be a problem.

We cannot avoid commenting upon a feature of the record that the parties did not perceive as significant. Consequently, it was not called to the attention of the United States District Court. The disposition by that court clearly is premised upon its conclusion that the license held by the Sterners after September 6, 1984 was a renewal of Liquor License Number Two from the Town of Mills. The court pointed out that at no time was a new license issued. Section 12–4–104, W.S.1977, provides the procedure to be followed "[w]hen an application for a license, permit, renewal or any transfer of location or ownership thereof has been filed with a licensing authority * * *." Section 12–4–104(b) then provides:

"Any license or permit authorized under this title shall not be issued, renewed or transferred until on or after the date set in the notice for hearing protests. *If a renewal or transfer hearing, the hearing shall be held no later than thirty (30) days preceding the expiration date of the license or permit.*" (emphasis added).

In this instance, the hearing was noticed for August 8, 1984. The license period, according to the license, was "for the term of one year being from the 6th day of Sept., A.D., 1983, to the 6th day of Sept., A.D., 1984." The only logical way to understand that term is that it began at midnight on September 6, 1983, and it ended at midnight on September 5, 1984, i.e. *to* September 6, 1984. From August 8, 1984 until September 5, 1984 is a period of 29 days only and, therefore, the hearing was not "held no later than thirty days preceding the expiration date of the license or permit." Under these circumstances, as a matter of law, the license was not a renewal license, but that feature makes no difference with respect to our answer to the certified question.

In our view, the property right in a liquor license in Wyoming is a transitory one, existing only for the one-year term. Consequently, we are comfortable with a

conclusion that the lien which the United States perfected upon this liquor license terminated on midnight September 5, 1984.

In accordance with Rule 11.07, W.R.A.P., this opinion shall be sent by the clerk of this court under the seal of the Supreme Court to the United States Court of Appeals for the Tenth Circuit and to the parties.