750 F.2d 679
 39 UCC Rep.Serv. 1781
 In re O'NEILL'S SHANNON VILLAGE, a Partnership and Ray C.
O'Neill and Patrick O'Neill d/b/a O'Neill's
Shannon Village, Debtors.
Michael E. CREW, Bankruptcy Trustee, Appellee,
v.
Charles L. DOROTHY, Appellant.
 No. 83-2333.
 United States Court of Appeals,
Eighth Circuit.
 Submitted April 10, 1984.
Decided Dec. 17, 1984.
 
 Charles L. Dorothy, Sioux Falls, S.D., for appellant.
 Michael B. Crew, Sioux Falls, S.D., for appellee.
 Before BRIGHT, Circuit Judge, SWYGERT,* Senior Circuit Judge, and BOWMAN, Circuit Judge.
 BOWMAN, Circuit Judge.
 
 
 1
 The sole issue raised by this appeal is whether under South Dakota law a valid security interest may be created in a liquor license issued by the State of South Dakota. The District Court held that it may not. We believe the District Court erred in so ruling, and therefore we reverse.
 
 
 2
 This case arises from the involuntary bankruptcy of O'Neill's Shannon Village (O'Neill's), a partnership which operated a combination bar, restaurant, and disco on leased premises in Sioux Falls. The business was not successful, and it closed its doors on April 30, 1980. In May 1980, O'Neill's having become delinquent on its rent payments, its landlord gave notice to vacate the premises. During that same month O'Neill's personal property, excluding its liquor license, was sold at auction, with the sale proceeds being paid to a bank that held a security interest in such property. In August 1980, an agreement was made between O'Neill's and Red Lobster Inns for the sale of O'Neill's most valuable asset, its liquor license, to Red Lobster Inns for $90,000. The agreement provided that O'Neill's would receive the $90,000 purchase price when the South Dakota Department of Revenue approved the transfer of the license to Red Lobster Inns.
 
 
 3
 Appellant Charles L. Dorothy (Dorothy), a Sioux Falls attorney, had begun handling the legal affairs of O'Neill's in April 1980. By November 1980 O'Neill's owed Dorothy $4,252.94 in legal fees and costs advanced. At that time O'Neill's began falling behind on payments it owed to the vendor of its liquor license. On November 17, 1980 Dorothy advanced O'Neill's $1,266.76 in order to keep those payments current. In order to provide security for the amounts owed to him by O'Neill's, Dorothy obtained and perfected a security interest in the license in the manner prescribed by the South Dakota adoption of the Uniform Commercial Code (UCC). In December 1980 Dorothy advanced O'Neill's further sums of money to protect O'Neill's interest in its liquor license. He also performed further services for which O'Neill's owed him legal fees. Again, Dorothy's claims for these amounts were secured against O'Neill's license in the manner prescribed by the UCC.
 
 
 4
 In late December 1980 the South Dakota Department of Revenue approved the transfer of the license to Red Lobster Inns and the $90,000 purchase price was paid to O'Neill's. On January 7, 1981, O'Neill's paid Dorothy $9,220.01, the total amount of his secured claims, from the proceeds of the sale of the liquor license. O'Neill's also settled the claims of some 45 other creditors by making payments to them from the sale proceeds. O'Neill's did not settle, however, with its landlord, and on March 4, 1981 the landlord placed O'Neill's in involuntary bankruptcy. The trustee in bankruptcy, the appellee herein, then initiated the present proceeding to recover $8,759.21 of the amount O'Neill's had paid Dorothy, claiming that the payment was a preferential transfer in violation of 11 U.S.C. Sec. 547(b)(2).
 
 
 5
 The District Court, sitting as the Bankruptcy Court, found that $4,506.27 of the payment to Dorothy did not constitute an unlawful preference, since that portion of the payment consisted of (1) a part of O'Neill's purchase price in obtaining the license, and (2) a substantially contemporaneous exchange for new value, in payment of a debt incurred in the ordinary course of business, and made on ordinary business terms within 45 days after the debt was incurred. See 11 U.S.C. Sec. 547(c). The District Court denied recovery to the trustee as to that amount. No appeal has been taken from that aspect of the District Court's decision.
 
 
 6
 The District Court concluded, however, that the remainder of O'Neill's payment to Dorothy was a preferential transfer, rejecting Dorothy's claim that under 11 U.S.C. Sec. 547(c) he was a secured creditor, since under In re Roberts, 358 F.Supp. 392 (D.S.D.1973), Dorothy's security interest in the liquor license was not valid and enforceable.[1] Accordingly, the District Court ruled that the trustee was entitled to recover $4,252.94 from Dorothy. Dorothy appeals from that decision.
 
 I.
 
 7
 The legal question before us--whether a valid security interest may be created in a liquor license in South Dakota--is obviously a question governed by the law of South Dakota. The District Court has made its determination of the South Dakota law on this point, and a determination by a District Court concerning the law of the state in which it sits is entitled to considerable deference. See Hartford Accident and Indemnity Company v. Stauffer Chemical Co., 741 F.2d 1142, 1145 (8th Cir.1984); Pyle v. Dow Chemical Co., 728 F.2d 1129, 1130 (8th Cir.1984).
 
 
 8
 In this case, however, we believe that deference to the District Court's reading of state law is inappropriate. We reach this conclusion for several reasons. First, there do not appear to be any decisions from the state courts of South Dakota addressing the issue of whether a valid security interest can be created in a liquor license. Second, the District Court's opinion is contrary to most of the cases decided since the enactment of the UCC by the various states; these cases appear to have been overlooked. Third, the District Court's opinion does not contain any reference to the UCC, nor does it indicate that the possible effect of the UCC was examined. Finally, we believe that the District Court's reliance on In re Roberts was misplaced. For these reasons, we decline to defer to the District Court's determination of the controlling question of South Dakota law. Instead, we make our own determination of what we believe the Supreme Court of South Dakota would hold if presented with the question now before us.
 
 II.
 
 9
 Title 35 of the South Dakota Codified Laws governs alcoholic beverages, including licensing policies and procedures. Nowhere in Title 35 is there an explicit prohibition against the encumbrance of liquor licenses. The section of the South Dakota law dealing with the transfer of liquor licenses provides in part as follows:
 
 
 10
 Any license granted under this title may be transferred to a new location or to another person. If the transfer is to another person, the licensee must show in writing, under oath, that he has made a bulk sale of the business operated under the license.... If the transfer is to a new location, the licensee must make application showing all the relevant facts as to such new location, which application shall take the same course and be acted upon as if an original application....
 
 
 11
 S.D. Codified Laws Ann. Sec. 35-2-7 (1977 and Supp.1984).
 
 
 12
 In its memorandum opinion, the District Court reasoned that this statute prohibits the creation of a security interest in a liquor license because a creditor who obtained such an interest could circumvent the statute's bulk-sale transfer requirement by foreclosing upon the license. We cannot agree with the District Court's reading of the statute. The bulk-sale requirement is triggered only when the license is transferred to another person. Plainly, a transaction which merely creates a security interest in the license in favor of a creditor of the licensee does not amount to a transfer of the license from the licensee to the creditor. See Paramount Finance Co. v. United States, 379 F.2d 543, 544-45 (6th Cir.1967); Bogus v. American National Bank of Cheyenne, Wyoming, 401 F.2d 458, 461 (10th Cir.1968). O'Neill's never relinquished its license to Dorothy, and Dorothy never foreclosed upon the license. As between O'Neill's and Dorothy, no transfer ever took place. The statutory policy is in no way offended by Dorothy's assertion of a right to have his security interest recognized by payment of the debt owed him by O'Neill's from the proceeds of the sale of the license to Red Lobster Inns. We conclude, then, that S.D. Codified Laws Ann. Sec. 35-2-7 does not prohibit the creation of a security interest such as the one Dorothy obtained in O'Neill's liquor license.[2]
 
 III.
 
 13
 We next consider the effect of the Uniform Commercial Code, S.D. Codified Laws Ann. Sec. 57A-1-101 et seq. Under Article 9 of the UCC, parties may create a security interest in personal property, including general intangibles, when it is their intent to do so. S.D. Codified Laws Ann. Sec. 57A-9-102(1)(a). O'Neill's and Dorothy clearly intended to create a security interest in Dorothy's favor in O'Neill's license. The critical question is whether a liquor license is encompassed by Article 9's definition of "general intangibles." According to that definition, "general intangibles" includes "any personal property (including things in action) other than goods, accounts, chattel paper, documents, instruments and money." S.D. Codified Laws Ann. Sec. 57A-9-106. The official comment to this section of the UCC emphasizes the extremely broad scope of this definition: it includes any personal property which is used or may become customarily used as commercial security. Uniform Commercial Code Sec. 9-106 (1972 Official Comment), 3 U.L.A. 181 (1981).
 
 
 14
 A liquor license, because of its transferability and its scarcity in the marketplace, may be--and no doubt frequently is--the most valuable asset a bar owns. In the instant case, O'Neill's liquor license commanded a price of $90,000. As a result of its market value, the liquor license often may be a key source of collateral used by bar owners to obtain credit. Given both this commercial reality and the UCC's broad definition of "property" to which a security interest may attach, it is hardly surprising that most of the courts that have dealt with the question of whether a valid security interest may be created in a liquor license have answered that question in the affirmative. See Bogus v. American National Bank of Cheyenne, Wyoming, 401 F.2d at 461; Paramount Finance Co. v. United States, 379 F.2d at 545; In re Coed Shop, Inc., 435 F.Supp. 472, 473 (N.D.Fla.1977), aff'd, 567 F.2d 1367 (5th Cir.1978); Gibson v. Alaska Alcoholic Beverage Control Board, 377 F.Supp. 151, 153-54 (D.Ala.1974); In Re McCormick, 26 B.R. 869, 874 (Bankr.E.D.Mich.1983); In re Camelot Court, Inc., 21 B.R. 596, 598 (Bankr.D.R.I.1982).
 
 
 15
 We find persuasive the reasoning of the Tenth Circuit in Bogus v. American National Bank, a case very similar to the present one. In Bogus, a trustee in bankruptcy challenged the validity of a security interest in a Wyoming liquor license. Affirming the district court's decision adverse to the trustee, the circuit court upheld the validity of the security interest, reaching this result even though the Wyoming liquor control statute expressly provided, unlike the South Dakota statute in the instant case, that a license is a personal privilege and is not subject to attachment, garnishment, or execution. The court observed that under the Wyoming liquor control law the license has "an element of transferability, as under certain conditions it may be sold." 401 F.2d at 461. Noting that a liquor license has "a unique value," the court held that a liquor license is a general intangible within the meaning of the UCC and that the UCC permits the creation of a security interest in such a license. Id. The court further held that to the extent the UCC permits the creation of a security interest in a liquor license, it "must be considered as overriding any inference that otherwise might be drawn from the liquor control act that an encumbrance may not be placed on a license issued thereunder." Id.
 
 
 16
 We conclude that the reasoning and result in Bogus represent the approach that the South Dakota Supreme Court would be most likely to take. This conclusion is reinforced by the other judicial decisions cited above, which permit the creation of a security interest in a liquor license.
 
 IV.
 
 17
 Finally, as mentioned earlier, we believe that the District Court's reliance on In re Roberts was misplaced. That case pitted the installment seller of a bar, who had foreclosed when the installment purchaser defaulted on his payments, against the Internal Revenue Service, which, based on tax liabilities of the purchaser, asserted liens against the liquor licenses used in the operation of the bar. The seller had retained title to all the assets of the bar, including the licenses, prior to any recording of the tax liens. After the government asserted its liens against the licenses, the seller turned the licenses in to the issuing authority, the Deadwood City Council, and that authority canceled the old licenses and issued new ones to her. On these facts, the District Court ruled that the seller's retention of title constituted a mortgage within the meaning of 26 U.S.C. Sec. 6323(a) and, as such, was entitled to priority over the unrecorded federal tax liens.
 
 
 18
 Unnecessarily disregarding a stipulation of the parties that a liquor license is "property" to which a federal lien may attach, the court further ruled, as an alternative basis for its decision, that a liquor license, standing alone, is not "property" within the meaning of the federal tax lien statute, 26 U.S.C. Sec. 6321. In so ruling, the court relied on the bulk-sale transfer requirements of S.D. Codified Laws Ann. Sec. 35-2-7. The UCC was not involved, and thus the court had no occasion to consider the UCC's effect upon a case like the present one.
 
 
 19
 It is apparent to us that in In re Roberts the district court intended its decision to be a narrow one, and also that the court wished to find as many bases as possible to support its decision in favor of the installment seller. Moreover, the facts of that case readily distinguish it from the instant case, which involves the UCC rather than the federal tax lien statute and consequently involves a South Dakota statute which specifically allows security interests in general intangibles. Accordingly, we are of the view that In re Roberts is not of major significance to a proper determination of the legal question presented in the instant case, and that the District Court should not have placed substantial reliance upon it for the proposition that a liquor license cannot be made subject to a valid security interest under the law of South Dakota.[3]V.
 
 
 20
 In conclusion, we hold that the District Court erred in ruling that Dorothy's security interest in O'Neill's liquor license was not valid and enforceable. Accordingly, the judgment below is reversed.
 
 
 
 *
 The Honorable Luther M. Swygert, Senior Circuit Judge for the United States Court of Appeals for the Seventh Circuit, sitting by designation
 
 
 [1]
 Neither the parties nor the District Court has drawn any distinction between a security interest in the liquor license and a security interest in the proceeds of the sale of the license, and the trustee in bankruptcy has made no contention that Dorothy's security interest, if valid, did not attach to the sale proceeds as well as to the license. We therefore take it as settled, as between these parties, that if valid the security interest covers both the license and the proceeds of its sale
 
 
 [2]
 It would appear that Section 35-2-7 presumes the existence of a functioning bar at the time a liquor license is transferred, and that the bulk-sale requirement is inapplicable to a transfer made by a defunct bar that already has disposed of its non-cash assets other than its license, which is the case here. In that regard, we note that the transfer of O'Neill's license to Red Lobster Inns, unaccompanied by a bulk sale, was approved by the State Revenue Department. It is of course obvious that in the ordinary case the wise creditor will take a security interest in all the equipment and inventory of the bar as well as in the liquor license. That avenue was not open to Dorothy because of O'Neill's antecedent sale of all its personal property (other than the license) used in the operation of the bar
 
 
 [3]
 It appears that the only decisions in which a UCC security interest in a liquor license has been ruled invalid have been in states in which the liquor control statute expressly requires that result. See In re Hodges, 33 B.R. 51 (Bankr.E.D.Pa.1983); In re Revocation of Liquor License No. R-2193, 72 Pa.Commw.Ct. 367, 456 A.2d 709, 711 & n. 9 (1983) (Pennsylvania liquor control statute expressly states a liquor license is not property); In re Midland Services, Inc., 10 U.C.C.Rep.Serv. (Callaghan) 499, 501 (Bankr.D.Neb.1971) (Nebraska liquor control statute expressly prohibits the encumbrance of a liquor license). In contrast, the South Dakota liquor control statute does not state that a liquor license is not property, nor does it contain an express prohibition against the encumbrance of a liquor license