523 A.2d 395

Janet R. KENDRICK, John L. Kendrick and
Kim M. Kendrick

v.

HEADWATERS PRODUCTION CREDIT ASSOCIATION and
Headwaters Federal Land Bank Association.

Superior Court of Pennsylvania.

Submitted Nov. 20, 1986.

Filed March 27, 1987.

Petition for Allowance of Appeal
Denied Aug. 12, 1987.

2

William A. Hebe, Wellsboro, for appellants.

Edward H. Owlett, Wellsboro, for appellees.

Before WIEAND, MONTEMURO and JOHNSON, JJ.

JOHNSON, Judge:

We are called upon to interpret a provision under Division Nine of the Uniform Commercial Code—Secured Transactions, Act of November 1, 1979, P.L. 255 No. 86, 13 Pa.C.S. § 9101 et seq.

■ On appeal we must determine whether an enforceable security interest is created when a debtor acquires rights in collateral pledged under a security agreement subsequent to the execution of the agreement and the giving of value. We conclude that pursuant to 13 Pa.C.S. § 9203(a) and (b) an enforceable security interest is created and attaches when (1) the collateral is in possession of the secured creditor or the debtor signs a security agreement which contains a description of the collateral, (2) value has been given and (3) the debtor has rights in the collateral. Upon the completion of all of these steps an enforceable security interest is created.

As a result of a family settlement agreement reached in the estate of Hillman Kendrick, Louis Kendrick purchased all the assets of that estate including real estate and personal property (cattle, equipment and machinery). Louis Kendrick later conveyed his interests in the real estate and personal property to himself and his wife Janet Kendrick. The Kendricks subsequently entered into a mortgage transaction with Headwaters Federal Land Bank (hereinafter Bank), in the amount of $80,000.00. Although he owned no interest in the real estate, the Kendrick's son John Kendrick joined in the mortgage transaction. Louis Kendrick later died and all title to the real estate and personal property passed to his wife, Janet.

On May 17, 1983 John Kendrick and his wife Kim, entered into a security agreement with Headwaters Production Credit Association (hereinafter Production Credit) in order to obtain a loan. In their agreement with Production Credit, John and Kim Kendrick pledged as collateral personal property (cattle, machinery and equipment) then owned solely by Janet Kendrick. On June 15, 1983 Production Credit filed a financing statement with the Prothonotary of Tioga County. Between May 17, 1983 and April 1, 1985 John and Kim Kendrick filed eight loan applications with Production Credit who in turn advanced them approximately $30,000.00.

On June 8, 1983 Janet Kendrick and her son, John Kendrick, entered into an installment agreement of sale, wherein Janet agreed to convey to John, cattle, machinery and equipment for the sum of $78,000.00, that being the remaining amount of the debt owed by Janet Kendrick to the Bank. The parties further agreed that John Kendrick would pay the purchase price by assuming and discharging in a timely fashion the indebtedness owed by Janet Kendrick to the Bank. John and Kim Kendrick subsequently defaulted on the loan agreement with Production Credit and the installment sale agreement with Janet Kendrick. On July 2, 1985 the cattle, equipment and machinery, the subjects of the Installment Agreement of Sale and security agreement, were sold at a public sale. The net proceeds of that sale came to $55,366.96, which was placed in an escrow account.

On July 19, 1985, Janet Kendrick, John Kendrick and Kim Kendrick filed an action for a declaratory judgment in order to establish the respective rights of the parties. Following a hearing, the trial court entered a verdict in favor of Production Credit for $30,991.77, and in favor of Janet Kendrick in the amount of $24,375.19. Following the denial of exceptions this appeal was taken by the Kendricks.[1]

Section 9203 of the Uniform Commercial Code-Secured Transactions provides that:

**(a) Enforceability.—**

Subject to the provisions of section 4208 on the security interest of a collecting bank and section 9113 on a security interest arising under the division on sales, a security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless:

---

1. A review of the record indicates that the judgment in the instant case was not entered until October 24, 1986. This appeal was filed on June 18, 1986 following the denial of appellant's exceptions. Pursuant to Pa.R.A.P. 905(a) we will treat this appeal as being filed after and on the day judgment was entered. *Beasley v. Beasley,* 334 Pa.Super. 510, 483 A.2d 853 (1984).

(1) the collateral is in the possession of the secured party pursuant to agreement, or the debtor has signed a security agreement which contains a description of the collateral and in addition, when the security interest covers crops growing or to be grown or timber to be cut, a description of the land concerned;

(2) value has been given; and

(3) the debtor has rights in the collateral.

**(b) Attachment.—**

A security interest attaches when it becomes enforceable against the debtor with respect to the collateral. Attachment occurs as soon as all of the events specified in subsection (a) have taken place unless explicit agreement postpones the time attaching.

13 Pa.C.S. § 9203(a)(1), (2), (3) and (b). Under 42 Pa.C.S. § 9105 a security agreement is defined as "an agreement which creates or provides for a security interest."

On appeal appellants raise two issues for our consideration, they are (1) whether Production Credit obtained a valid enforceable security interest in the cattle, equipment and machinery of Janet Kendrick and (2) whether Janet Kendrick had a perfected security interest in those assets superior to that of Production Credit. Appellants argue that the security agreement is not enforceable because John and Kim Kendrick had no rights in the cattle, machinery and equipment at the time they attempted to pledge those assets as security. Appellants further argue that there was no language in the security agreement which would indicate that the parties agreed to postpone the time when the security interest would attach. Consequently, appellants submit that the security agreement was not enforceable under 13 Pa.C.S. § 9203.

Appellants additionally argue that Janet Kendrick had an enforceable security interest in the property in question by virtue of the installment agreement of sale executed by Janet and John Kendrick on June 8, 1983. Appellants contend that Janet Kendrick's security interest attached as of June 8, 1983 and was perfected by virtue of her contin-

ued possession of the property thereby giving her priority over the alleged security interests of Production Credit.

In the instant case a security agreement was executed by John Kendrick and Production Credit on May 17, 1983. Value was given in the nature of a series of loans from Production Credit to John Kendrick. However, at the time of the signing of the security agreement, John Kendrick had no rights in the collateral pledged to secure the loan. 13 Pa.C.S. § 9203(a)(3). Under Section 9203(b) a security interest attaches when it becomes enforceable against the debtor with respect to the collateral and attachment occurs as soon as all the requirements of 13 Pa.C.S. § 9203(a) have taken place. Since John Kendrick did not acquire rights in the collateral until June 8, 1983 when he executed a sales agreement with Janet Kendrick concerning the exact property which was subject to the security agreement, Production Credit's security interest did not attach and become enforceable until June 8, 1983.

In determining whether Janet Kendrick also retained a security interest we note that "the determination of whether a security interest exists initially depends upon the intent of the parties to the transaction." *Bonczek v. Pascoe Equipment Co.*, 304 Pa.Super. 11, 450 A.2d 75 (1982). The sales agreement executed by Janet Kendrick and her son John Kendrick is silent both as to passage of title and whether the parties intended that Janet Kendrick retain a security interest in the goods in question. A review of the record indicates that it was the understanding of both Janet Kendrick and John Kendrick that title to the cattle, equipment and goods would not pass until such time as John Kendrick fulfilled the terms of the contract. N.T. 8/5/85 at 4, and 9. *Murray v. University of Pennsylvania Hospital*, 340 Pa.Super. 401, 490 A.2d 839 (1985) (parol evidence is admissible to explain and supplement a written agreement where it is shown that the writing was not intended to and did not state the entire agreement between the parties).

Section 2401 of the Uniform Commercial Code-Sales provides, in pertinent part:

### § 2401. Passing of title; reservation for security; limited application of section

**(1) Identification of goods and reservation of title.—** Title to goods cannot pass under a contract for sale prior to their identification to the contract (section 2501), and unless otherwise explicitly agreed the buyer acquires by their identification a special property as limited by this title. Any retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest. Subject to these provisions and to the provisions of Division 9 (relating to secured transactions), title to goods passes from the seller to the buyer in any manner and on any conditions explicitly agreed on by the parties.

Inasmuch as the Kendricks had agreed that title was reserved in Janet Kendrick until the purchase price would be paid in full, and since the retention of title is limited in effect to a reservation of a security interest, pursuant to Section 2401(1), the trial court did not err in finding that Janet Kendrick retained a security interest in the goods in question.

We now must determine the priority of the security interests held by Production Credit and Janet Kendrick.

 The record shows that Production Credit perfected its security interest by filing the financing statement with the Prothonotary's Office of Tioga County on June 15, 1983. 13 Pa.C.S. §§ 9302(a). We agree with the trial court's conclusion that Janet Kendrick had an unperfected security interest. Pursuant to 13 Pa.C.S. § 9305 some security interests may be perfected without filing. That section provides that:

A security interest in letters of credit and advices of credit (section 5116(b)(1)), goods, instruments, money, negotiable documents or chattel paper may be perfected by the secured party's taking possession of the collateral. If such collateral other than goods covered by a negotiable document is held by a bailee, the secured party is deemed to have possession from the time the bailee receives

notification of the interest of the secured party. A security interest is perfected by possession from the time possession is taken without relation back and continues only so long as possession is retained, unless otherwise specified in this division.

Appellants here argue that Janet Kendrick's security interest was perfected by possession. We disagree.

A review of the record indicates that although the location of the goods in question did not change as a result of the June 8 sales agreement, John Kendrick was the chief operator of the farm on which all the Kendricks resided. N.T. 8/1/85 at 5; Opinion, Kemp, J. at 1. The fact that the collateral and Janet Kendrick were physically located in the same place does not demonstrate her possession of the goods where dominion and control of the property appeared to be in John Kendrick as chief operator of the farm, both before and after the execution of the sales agreement. *See, Dolly Madison Industries,* 351 F.Supp. 1038 (E.D.Pa.1972), aff'd 480 F.2d 917 (3d Cir.1973).

Section 9312 of the U.C.C. sets forth the order of priorities among conflicting security interests in the same collateral. In order to determine the scheme of priorities in this case we turn to the relevant subsections of section 9312, which provide:

In all cases not governed by other rules stated in this section (including cases of special priorities set forth in subsections (c) and (d)), priority between conflicting security interests in the same collateral shall be determined according to the following rules:

(1) Conflicting security interests rank according to priority in time of filing or perfection. Priority dates from the time a filing is first made covering the collateral or the time the security interest is first perfected, whichever is earlier, provided that there is no period thereafter when there is neither filing nor perfection.

(2) So long as conflicting security interests are unperfected, the first to attach has priority.

13 Pa.C.S. § 9312(e)(1) and (2). Under § 9312(e)(1) conflicting security interests rank according to the priority of filing or perfection and priority dates from the time of filing or perfection.

Production Credit perfected its security interest first by filing on June 15, 1983. Janet Kendrick had an unperfected security interest. Accordingly, we find no error on the part of the trial court in its finding that Production Credit's perfected security interest had priority over Janet Kendrick's unperfected security interest and accordingly affirm its decision.

Judgment affirmed.