In re Dick J. CLARK a/k/a Richard J. Clark d/b/a Laurel Valley Inn, Debtor.

**CHRYSLER FIRST CONSUMER DISCOUNT COMPANY, Movant,**

v.

**Dick J. CLARK a/k/a Richard J. Clark d/b/a Laurel Valley Inn, and K. Lawrence Kemp, Trustee, Respondents.**

**Bankruptcy No. 88–1126 PGH.
Motion No. 88–5634.**

United States Bankruptcy Court,
W.D. Pennsylvania.

March 6, 1989.

Reed J. Davis, Pittsburgh, Pa., for Chrysler First Consumer Discount Co.

Robert H. Slone, Greensburg, Pa., for debtor.

K. Lawrence Kemp, New Kensington, Pa., trustee.

OPINION

WARREN W. BENTZ, Bankruptcy Judge.

We incorporate the movant's statement of the undisputed facts as follows.

## Facts

In July 1986, the debtor, Dick Clark (hereinafter "Clark") entered into a loan transaction with Chrysler First Consumer Discount Company ("Chrysler"), the proceeds of which were used to purchase the Wagon Wheel Restaurant, later renamed the "Laurel Valley Inn." To secure Clark's obligation to repay, Chrysler attempted to protect its position by having Clark execute two instruments. Among them was a first mortgage in favor of Chrysler covering the premises purchased. The second, which was titled "Acknowledgement" (hereinafter the "Acknowledgement"), referred exclusively to liquor license TR–1793 (hereinafter the "License"), the terms of which agreement provide:

### ACKNOWLEDGEMENT

We, the undersigned, do hereby acknowledge, consent and agree that liquor license TR–1793 issued by the Pennsylvania Liquor Control Board for use at premises situate at R.D. #1, Box 19, Ligonier, Pennsylvania 15650, will not be removed from said premises, nor transferred without the prior written consent of Finance America Consumer Discount Company, until mortgage loan from Finance America Consumer Discount Company to Diane C. Clark and Dick J. Clark a/k/a Richard J. Clark is paid in full.

LAUREL VALLEY INN
By /s Diane C. Clark
By /s Dick J. Clark
By /s Richard J. Clark

Furthermore, Clark signed a UCC–1 financing statement listing the License as additional collateral to secure repayment of the loan. The financing statement was subsequently filed in Westmoreland County and with the Commonwealth of Pennsylvania prior to the close of the transaction.

Subsequent to Chrysler's having advanced the funds and the execution of the Acknowledgement, the Pennsylvania Legislature amended § 4–468 of the Liquor Code on June 29, 1987, adding subsection (d) which provides:

"§ 4–468. *Licenses not assignable; transfers.*

...(d) The license shall constitute a privilege between the Board and the licensee. As between the licensee and third parties, the license shall constitute property." [1]

Finally, Clark filed his Petition for Relief under the Bankruptcy Code on or about April 26, 1988, thereby staying the enforcement of Chrysler's asserted security interest, whereupon it filed the Motion for Relief of the Automatic Stay and Request for Adequate Protection now before this court.

Chrysler also properly states the issues:

## Issues

1. Whether or not the executed Acknowledgement is sufficient to satisfy the formal requirements of an enforceable security agreement?

2. Whether or not Chrysler's security interest attached at the time the Pennsylvania Liquor Code was amended in 1987 to state that a liquor license was to be treated as personal property as between the licensee and third parties?

## Discussion

Section 9203 of the Pennsylvania Commercial Code sets forth the requirements for an enforceable security interest.[2] That section specifically provides:

§ 9203. *Attachment and enforceability of security interest; proceeds, formal requisites.*

(a) Enforceability.— ...a security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless:

(1) the collateral is in the possession of the secured party pursuant to agreement, or the debtor has signed a security agreement which contains a description of the collateral ...

(2) value has been given; and

(3) the debtor has rights in the collateral.

Chrysler argues that it gave value when it advanced the sum of $85,000 to Clark

---

1. Pa.Stat.Ann. Tit. 47, § 4–468(d) (Purdon 1988).

2. 13 Pa.Cons.Stat.Ann. § 9203 (Purdon 1984).

enabling him to finance and close the purchase transaction shortly after the advance was made, and that determining whether Chrysler has an enforceable security interest in the License merely requires a finding that a security agreement was executed between the parties and that Clark ultimately acquired "rights in the collateral" citing *Kendrick v. Headwaters Production Credit Assoc.*, 362 Pa.Super. 1, 523 A.2d 395, *appeal denied*, 515 Pa. 614, 530 A.2d 867 (1987).

13 Pa.Cons.Stat.Ann. § 1201 (Purdon 1984) defines "security interest" as follows:

"A security interest means an interest in personal property or fixtures which secures payment or performance of an obligation."

13 Pa.Cons.Stat.Ann. § 9201 (Purdon 1984) provides that:

"Except as otherwise provided by this title, a security agreement is effective according to its terms between the parties, against purchasers of the collateral and against creditors."

13 Pa.Cons.Stat.Ann. § 9105(a) (Purdon 1984) provides the following definition:

" 'Security Agreement.' An agreement which creates or provides for a security interest."

Chrysler states correctly that the Code does not carefully define what exactly constitutes a security agreement, so that we must look to case law, citing *In re Bollinger Corp.*, 614 F.2d 924 (3d Cir.1980). That court observed certain prior interpretations, including that of the Tenth Circuit[3] under which a "creditor's assertion of a secured claim must fall in the absence of language connoting a grant of a security interest." *Id.* at 926. The court in *Bollinger* further noted that the requirement of "grant" language had been criticized and not followed by other courts which adopted a less strict rule, quoting with approval:

A writing or writings, regardless of label, which adequately describes the collateral, carries the signature of the debtor, and establishes that in fact, a security

interest was agreed upon, would satisfy both the formal requirements of the statute and the policies behind it. [*In re Numeric Corp.*, 485 F.2d 1328, 1331 (1st Cir.1973) ]

The *Bollinger* court concluded: "The intention of the parties to create a security interest may be gleaned from the expression of future intent to create one in the promissory note and the intention of the parties as expressed in letters constituting their course of dealing." *Id.* at 928.

■ Chrysler argues that the Acknowledgement (1) rendered the debtor unable to transfer the License thereafter to anyone else, including creditors and (2) precluded the debtor from transferring the License to a different premises, and is therefore sufficient as a security agreement. Chrysler concludes that it has a security interest in the License. However, while the Acknowledgement does constitute an agreement, and the parties are bound by its terms, and it identifies the License, its terms only provide limitations on the transfer of the License; the terms of the agreement do not indicate an intent to give to Chrysler a security interest in the License. Chrysler may prohibit a transfer of the License from the premises or prohibit the transfer of the License to an outside party, but it is given no right in the writing to foreclose on the License, to take possession of it, to have it cancelled, to have it transferred to itself, to have any of the rights of a secured party under the Uniform Commercial Code, nor may Chrysler in any other manner derive a benefit from it except insofar as it may extract a ransom by being able to preclude a transfer by the debtor to another party or by the debtor to another premises.

We liken Chrysler's rights to the rights of a party to maintain a debtor's chicken within an enclosed, fenced-off area, under an agreement that the creditor might maintain the fence in place, preventing the chicken from being removed or used in any other place, or sold or transferred to any other person by the debtor, yet the secured creditor has no right in himself, on default

---

**3.** *Shelton v. Erwin,* 472 F.2d 1118, 1120 (10th    Cir.1973).

or otherwise, to remove the chicken for his own benefit.

The outcome would be different if the writing had stated that Chrysler would have a security interest, for then Chrysler would have the right of possession under the Uniform Commercial Code upon default. And again, if the agreement had given, or evidenced an intent to give, Chrysler the right to possession upon default, then such a right could be enforced under the Uniform Commercial Code. But here, there is nothing to indicate an intent to give to Chrysler a security interest in the liquor license.

No doubt the debtors would have given Chrysler a security interest in the License if Chrysler had asked for it. It is apparent that Chrysler did not ask for a security interest. The obvious reason why Chrysler did not request a security agreement or security interest in the License was the fact that, under the state of the law at that time, the License was not property and no security interest could be obtained in it by a creditor.

Thus, the attempted security interest must fail.

 The above conclusion makes unnecessary our consideration of the other issue, that is, whether Chrysler's security interest would have attached at the time the Pennsylvania Liquor Code was amended in 1987. This court's view, though now unimportant to disposition of this case, is that when the legislation was enacted in 1987 changing the law so that thereafter a liquor license does constitute property, all of the elements would have fallen into place to create a valid security interest under U.C.C. § 9203 if the Acknowledgement had contained language evidencing an intent to grant a security interest. In many transactions, the financing statements, security agreements and value have been advanced prior to the time the debtor has an interest in the collateral. When the debtor acquires an interest in the collateral (e.g., when the purchased item is delivered to the debtor), that being the last necessary element of a valid security interest, the security interest thereupon attaches. There is no reason why such rule should not apply to a liquor license. Here, however, the fundamental element of a valid underlying security interest is missing.

### ORDER

The Motion for Relief from Automatic Stay filed by Chrysler First Consumer Discount Company shall be, and hereby is, dismissed, and its alleged security interest in the liquor license is hereby determined to be nonexistent and the trustee is ordered to liquidate same for the benefit of the estate.