**In re Anthony M. GENUARIO d/b/a Genuario's Restaurant, Debtor.**

**Bankruptcy No. 8910718.**

United States Bankruptcy Court, D. Rhode Island.

Dec. 20, 1989.

William J. O'Brien, Law Offices of Arnold N. Montaquila, Ltd., Providence, R.I., for debtor.

Mark H. Burnham, Law Offices of Alfred G. Thibodeau, Providence, R.I., for Providence Economic Development Corp.

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

Heard on November 16, 1989 on Motion of the Providence Economic Development Corporation ("the PEDC") for Relief from the Automatic Stay, and for leave to sell all of the debtor's property, consisting of used restaurant equipment and a Class B liquor license. The debtor, Anthony M. Genuario, objects to the motion to the extent that PEDC requests leave to sell the liquor license, and asserts that: (1) he did not in-

tend to grant a security interest in the liquor license; (2) the liquor license is not adequately described in the security agreement; and (3) that the language in schedule A, allegedly attached to the security agreement, is overly broad and does not describe in a "reasonably intelligent manner" the liquor license as collateral.

The facts giving rise to the instant dispute, often in sharp conflict, appear to this Court to be as follows: Sometime in January 1988, Genuario applied to the PEDC for a loan, to be used for the expansion of his restaurant and for the purchase of additional equipment. During the loan application process, and continuing through the closing, Genuario dealt almost exclusively with Joseph Abbate, Associate Director of the PEDC. As a prerequisite to the approval of a loan in the amount of $75,660, the PEDC required Genuario to grant it a security interest in all of the assets of the restaurant. Although he doesn't recall specifically discussing the liquor license with Mr. Genuario, Abbate testified that his understanding and intention was that the liquor license would have had to be included as security for this loan, particularly since the debtor had no real estate to offer as collateral.[1] On May 3, 1988 a commitment letter was prepared by the PEDC which provided, among other things, that "[a]ll assets of the Company are to be secured by U.C.C. I and a Security Agreement." (PEDC's Exhibit 4, paragraph 11, p. 2). Genuario indicated acceptance of the terms and conditions of this commitment letter when he signed the document on May 17, 1988.

The loan closing was held on June 7, 1988. Unfortunately, the parties' respective versions of the facts and details relating to the closing are so diametrically opposed that there is no way to reconcile them. For example, the parties disagree on how long the closing lasted, who was present, what documents were presented, what was discussed, and in general, what transpired. Based on this Court's observation of the principal witnesses, the reasonableness of their respective stories, their motivation to fabricate, and the corroborating testimony of Ms Lisa DiRaimo, an administrative assistant at PEDC, we resolve all material issues of fact in favor of the movant, and find that the PEDC's version of the facts is more credible than the debtor's. With this in mind, we accept Abbate's testimony that he was present during the entire closing, that he personally handed each document to Genuario for his signature, that all documents were signed and witnessed in his presence, and that Ms DiRaimo assisted him at the closing. Abbate also testified, and we find as a fact, that he discussed all of the documents with Genuario, including his advice to Genuario that the U.C.C. 1 form would be recorded to secure all of the assets of the business. In addition, Ms DiRaimo testified that Schedule A and Exhibit A were both attached to the security agreement and the financing statement when Genuario signed them, and she supported Abbate's statement that all of these documents were explained to Genuario. We believe Ms DiRaimo and accept her testimony in its entirety. Her credibility gets an additional boost because she was not present during the examination of Abbate.

The legal issues before the Court are: (1) whether the parties intended to create a security interest in the liquor license; (2) whether the security agreement and financing statement adequately describe the liquor license as collateral; and (3) whether the description of the liquor license as a general intangible meets the requirements of the Uniform Commercial Code as set forth in R.I.GEN.LAWS § 6A–9–110.

■ We consider first the issue of intent. In *In re Camelot Court, Inc.*, 21 B.R. 596, 598 (Bankr.D.R.I.1982), we held that in Rhode Island a liquor license may be the subject of a valid security interest. In that decision however, we were not asked to consider whether the parties intended to

---

**1.** After informing Genuario that the PEDC Board would not approve the loan without real estate as collateral, Abbate stated that Genuario offered all of the assets of the restaurant as collateral, and that there was no doubt in his mind that "all assets" included the liquor license.

create a security interest in the liquor license. It has been held elsewhere, however, that "[r]egardless of the form, if the parties intend to create a security interest in a liquor license it comes within the ambit of Article 9" *Matter of Ratcliff Enterprises, Inc.*, 44 B.R. 778, 780 (Bankr.E.D.Mich. 1984); *see also Crew v. Dorothy (In re O'Neill's Shannon Village)*, 750 F.2d 679 (8th Cir.1984) ("Under Article 9 of the U.C.C. parties may create a security interest in personal property, including general intangibles, when it is their intention to do so." *Id.* at 682); *Queen of the North, Inc. v. Legrue*, 24 U.C.C.Rep.Serv. (Callaghan) 1301, 582 P.2d 144 (Ak.1978) ("The test under which a document is determined to be a security agreement is one of intent to create a security interest in the collateral" *Id.* at 1306, 582 P.2d 144).

Based on the evidence presented, including: (1) the testimony of Abbate that the PEDC would not have granted this loan without the liquor license as security, in addition to all of the debtor's restaurant equipment; (2) the commitment letter dated May 3, 1988, which was signed by the debtor on May 17, 1988 acknowledging that "[a]ll assets of the Company are to be secured by U.C.C. I and a Security Agreement" (PEDC's Exhibit 4, paragraph 11, p. 2); (3) the security agreement entered into between the debtor and the PEDC which provides that a security interest is granted in the property set forth on the attached schedule A including "[a]ll general intangibles of every nature, including, without limitation, patents, trademarks, licensing agreements, royalty payments, copyrights, service names, servicemarks and logos, whether presently existing or hereafter acquired." (PEDC's Exhibit 3, Schedule A, Paragraph E); and (4) the financing statement signed by Genuario which covers "[a]ll of the Debtor's tangible and intangible personal property, including machinery, equipment, furniture, fixtures, inventory, accounts receivable, and contract rights, as more particularly described in SCHEDULE A attached hereto and made a part hereof." (PEDC's Exhibit 2); we find as a fact and conclude as a matter of law that Genuario intended to and did grant a security inter-

est in the debtor's Class B liquor license to the PEDC as an inducement to obtain the loan. In the case of *In re Clark*, 96 B.R. 605, 607 (Bankr.W.D.Pa.1989), the bankruptcy court noted with approval the Third Circuit's holding in *In re Bollinger Corp.*, 614 F.2d 924 (3d Cir.1980) in which it stated "[t]he intention of the parties to create a security interest may be gleaned from the expression of future intent to create one in the promissory note and the intention of the parties as expressed in letters constituting their course of dealing." *In re Clark, supra,* at 607 (citing *In re Bollinger, supra,* at 928). While intent is often difficult to ascertain, we are satisfied, based on the totality of the circumstances and the evidence, that Mr. Genuario did intend to grant the PEDC a security interest in his liquor license in order to obtain the loan. We also find that in the absence of such intent, the loan in question wouldn't have been granted, notwithstanding the Mayor's alleged intervention on Genuario's behalf.

■ Next we consider whether the liquor license is adequately described in the loan documents. It is generally accepted that a liquor license qualifies as a general intangible. *Queen of the North, supra,* 24 U.C.C.Rep.Serv. (Callaghan) at 1306, 582 P.2d 144; *In re Ratcliff Enterprises, supra; In re O'Neill's Shannon Village, supra; Tomb v. Lavalle*, 298 Pa.Super. 75, 444 A.2d 666 (1981). "A description of a liquor license collateral, for the purpose of perfecting a security interest in the license, has been held sufficient where the description specifically refers to the license or merely covers the licensee's general intangibles." Annotation, Security Interests in Liquor Licenses, 56 ALR4th 1131, 1134 (1987). In *In re Ratcliff Enterprises, supra,* the court held that because a liquor license is a general intangible, and is therefore "property" within the meaning of Article 9, a security interest is properly perfected where the financing statement refers merely to general intangibles and does not specifically identify the liquor license. Although R.I.GEN.LAWS § 6A–9–106 entitled "Definitions—'Account'—'General in-

tangibles'" does not specifically identify a liquor license as a general intangible,[2] R.I. GEN.LAWS § 6A-9-110, entitled "Sufficiency of description" states that "[f]or the purposes of this chapter any description of personal property or real estate is sufficient whether or not it is specific if it reasonably identifies what is described." In light of the widespread acceptance of a liquor license as a general intangible, and considering that it is not excluded under that definition in R.I.GEN.LAWS § 6A-9-106, we hold, in a situation of first impression in this Court, that such a classification is appropriate, and further, that the movant's reference to general intangibles in Schedule A of both the Security Agreement and the Financing Statement reasonably identified the liquor license, in accordance with the requirements of R.I. GEN.LAWS § 6A-9-110.

Having concluded that the debtor did intend to grant a security interest in the liquor license to the PEDC, that its description as a general intangible is sufficient under R.I.GEN.LAWS § 6A-9-110 to create a valid security interest on behalf of the PEDC, and with no other grounds for objection present, it is ORDERED that the PEDC's Motion for Relief from Stay is GRANTED.

Enter Judgment accordingly.

---

**2.** R.I.GEN.LAWS § 6A-9-106 states in relevant part that "'General intangibles' means any personal property (including things in action) other than goods, accounts, chattel paper, documents, instruments, and money."