In re Amanda Lynn **PRICE** fka Amanda Lynn Crawford, and William Frances Price, Jr., Debtors.

Citifinancial Auto Corp. fka Transouth Financial Corp., Objectant,

v.

Amanda Lynn Price fka Amanda Lynn Crawford, and William Frances Price, Jr., Respondents.

No. 1:06BK01457 MDF.

United States Bankruptcy Court, M.D. Pennsylvania.

March 5, 2007.

Dorothy L. Mott, Kara Katherine Messner, Law Office of Dorothy L. Mott, Harrisburg, PA, for Debtor.

## OPINION

MARY D. FRANCE, United States Bankruptcy Judge.

### Procedural and Factual History

On September 7, 2004, William and Amanda Price ("Debtors") purchased a 2004 Jeep for personal use. To finance the vehicle, they obtained a loan of $31,481.77 from TranSouth Financial Corp, which later assigned the loan to CitiFinancial Auto Corporation ("CitiFinancial"). Debtors made fourteen (14) monthly payments to CitiFinancial, the last having been made on February 11, 2006. The vehicle, which was uninsured at the time, was demolished in a one-car accident on April 19, 2006. On July 7, 2006, Debtors filed the instant chapter 13 petition listing CitiFinancial as a secured creditor. Debtors proposed in their chapter 13 plan to surrender the Jeep to CitiFinancial in satisfaction of its claim. Although it is undisputed that CitiFinancial had a prepetition perfected security interest in the Jeep, it filed an unsecured claim for the balance owed on the loan. On September 26, 2006, two days after the objection deadline set by the Court, CitiFinancial filed an objection to confirmation of Debtors' chapter 13 plan. In the objection, CitFinancial argued that the Bankruptcy Code did not authorize surrender of an essentially worthless vehicle in full satisfaction of its claim. On October 3, 2006, Debtors moved

for summary judgment in their favor on CitiFinancial's objection. Debtors argued that because they had purchased the Jeep during the 910–day period before they filed their petition, as a matter of law, CitiFinancial's claim could not be bifurcated under § 1325.[1] A hearing on the matter was held on October 4, 2006, and briefs were submitted thereafter. Thus, the matter is ready for decision.[2]

### Discussion

An order granting summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A motion for summary judgment is the equivalent of a motion for judgment on the pleadings when the material allegations of fact are not controverted in the pleadings and only questions of law remain to be decided by the court. See In re Lozada, 214 B.R. 558 (Bankr.E.D.Va.1997) (citing cases).

The pleadings before me are Debtors' proposed chapter 13 plan, Citifinancial's objection to the plan, Debtors' motion for summary judgment and Citifinancial's answer to the motion. As indicated above, the plan at issue proposes to surrender a demolished motor vehicle in full satisfaction of the creditor's claim.[3] Debtors assert that their proposed treatment of CitiFinancial's claim is authorized under § 1325(a)(5)(C), which provides that a bankruptcy court "shall confirm" a plan if "with respect to [an] allowed secured claim provided for by the plan ... the debtor surrenders the property securing such claim to [the] holder [of the secured claim]." 11 U.S.C. § 1325(a)(5)(C). CitiFinancial argues that Congress did not intend for creditors to be deprived of deficiency claims and that even if surrender of collateral in full satisfaction of a claim is permitted in some circumstances, it should not be permitted under the facts of this case.

Under § 1325(a)(5) of the Bankruptcy Code as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. No. 109–8, 119 Stat. 37 ("BAPCPA"), a debtor may address secured debt in a plan in one of three ways. First, a debtor and a creditor may agree to certain treatment of the claim in the plan. 11 U.S.C. § 1325(a)(5)(A). Second, the debtor may propose to retain the collateral and pay the full amount of the claim. 11 U.S.C. § 1325(a)(5)(B), (a)(9*).[4] Third, the debtor

1. The Prices also argued that CitiFinancial's objection should be denied as untimely. At a hearing on the matter, I informed the parties that I would consider CitiFinancial's objection even though it was tardily filed. I directed the parties to file briefs on the issues related to § 1325. In their brief, the Prices addressed only the § 1325 issues and abandoned their arguments regarding the timeliness of CitiFinancial's objection.

2. I have jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is core pursuant to 28 U.S.C. § 157(b)(2)(A).

3. The plan itself does not use the adjective "full" to modify the word "satisfaction."

Both Debtors and CitiFinancial repeatedly indicate in their briefs, however, that surrender of the vehicle is intended to be in "full satisfaction" of CitiFinancial's claim. Since the parties agree that the word "satisfaction" means "full satisfaction," I will adjudicate the matter based on this uncontested interpretation of the term.

4. Prior to the enactment of BAPCPA a debtor could retain the creditor's collateral over the objection of the creditor, if the debtor paid the present value of the collateral (the allowed secured claim) over the term of the plan. The value of the allowed secured claim was determined under § 506. Associates Commercial Corp. v. Rash, 520 U.S. 953, 957 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997). Claims sub-

may surrender the collateral that secures the claim. 11 U.S.C. § 1325(a)(5)(C). Debtors in the within case have elected to treat CitiFinancial's claim under § 1325(a)(5)(C).

To enable them to confirm their plan, § 1325(a)(5)(C) authorizes Debtors to surrender to CitiFinancial the collateral securing the loan. CitiFinancial does not contest Debtors' surrender of the vehicle. It objects, however, to the statement in the plan that CitiFinancial's claim will be *satisfied* by this act. CitiFinancial asserts that under state law it has an unsecured claim equal to the balance of the loan on the date Debtors' bankruptcy petition was filed and that it may assert that claim in Debtors' bankruptcy case. Therefore, it objects to being compelled to accept the vehicle in full satisfaction of its claim without the opportunity to file an unsecured claim for the deficiency. Debtors assert that its treatment of CitiFinancial's claim is authorized by 11 U.S.C. § 1325(a)(9*) as incorporated into § 1325(a)(5). Section 1325(a)(9*) reads, in pertinent part, as follows:

> For purposes of [11 U.S.C. § 1325(a)(5) ], section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910–day (sic) preceding the date of the filing of the petition, and the collateral for that debt consists

of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor. . . . [5]

11 U.S.C. § 1325(a)(9*).[6]

Section 506, in turn, provides that "[a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim." 11 U.S.C. § 506(a)(1). Debtors argue that because the hanging paragraph specifies that § 506 shall not apply, CitiFinancial's claim cannot be bifurcated, and the total amount due must be treated as secured. Therefore, the value of the collateral, regardless of how minimal, should be applied to satisfy the secured claim, leaving no unsecured deficiency claim.

### a. Nature of CitiFinancial's claim

■ Before reaching the issues surrounding the application of the hanging paragraph to the facts of this case, I must first determine whether CitiFinancial's claim is secured or unsecured. If the claim is unsecured, § 1325(a)(5) is not at issue because it only addresses the treatment of secured claims.[7] Although a perfected security interest in the Jeep was created, CitFinancial asserts that it now

---

ject to the limitations of § 1325(a)(9*) no longer may be afforded this treatment.

**5.** A creditor holding such a claim has come to be known colloquially as a "910 creditor."

**6.** "The quoted language appears immediately after subsection (a)(9) of section 1325, but it relates to subsection (a)(5) and has nothing to do with subsection (a)(9)." *In re Finnegan*, 358 B.R. 644, 2006 WL 3883847, *5 fn. 4 (Bankr.M.D.Pa.) (citations and internal quotations omitted.) Adopting a label applied to it

by other courts, this language will be referred to herein as "the hanging paragraph." *See Id.*

**7.** If CitiFinancial's claim is unsecured the plan may be confirmed if "the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate . . . were liquidated under chapter 7 . . . ." 11 U.S.C. § 1325(a)(4).

has an unsecured interest because the vehicle has no value. To resolve this issue, the Court first must look to Pennsylvania law. *Butner v. United States,* 440 U.S. 48, 54–55, 99 S.Ct. 914, 918–919, 59 L.Ed.2d 136 (1979) (state law defines property interests.); *In re SubMicron Systems Corp.* 432 F.3d 448, 458, (3d Cir.2006) (state law determines whether claims asserted by creditors in bankruptcy are secured).

 Under Pennsylvania law, an enforceable security interest is created and attaches when the debtor executes a security agreement that contains a description of the collateral, value has been given and the debtor has rights in the collateral. 13 Pa.C.S.A. § 9203(b); *Matter of Tressler,* 771 F.2d 791 (3d Cir.1985); *Kendrick v. Headwaters Production Credit Association,* 362 Pa.Super. 1, 523 A.2d 395 (1987). A security interest in a motor vehicle is perfected when the Pennsylvania Department of Transportation receives an application for a certificate of title with information regarding the security interest. 75 Pa.C.S.A. § 1132. It is not CitiFinancial's position that its security interest did not attach under the Uniform Commercial Code or that its lien was not properly perfected under the Motor Vehicle Code. No evidence was provided that the security interest was released or satisfied before the vehicle was demolished. This Court was unable to locate any authority for the proposition that a reduction in the value of the collateral destroys the secured status of the interest. Further, the Court cannot find, as a matter of law, that the vehicle has no value to which CitiFinancial's claim could attach merely because the vehicle was "totaled." [8] There is no provision in the Bankruptcy Code that enables a secured creditor to assert that its claim is unsecured simply because its treatment will be more favorable as an unsecured claim. "[T]he determination of whether a claim is secured is made under state law, not federal law, and a creditor does not lose his secured status merely because § 506 is not applicable to 910 claims under the hanging paragraph." *In re Brooks,* 344 B.R. 417, 420 (Bankr.E.D.N.C.2006). Accordingly, I conclude that CitiFinancial's claim in this case is a secured claim.

b. *Application of the Rules of Statutory Construction to the Hanging Paragraph*

 "[W]hen the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,* 530 U.S. 1, 6, 120 S.Ct. 1942, 1947, 147 L.Ed.2d 1 (2000) *quoting United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (other citations and internal quotations omitted). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.,* 519 U.S. 337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997) *citing Ron Pair,* 489 U.S. at 240, 109 S.Ct. 1026. *See also Price v. Delaware State Police Federal Credit Union,* 370 F.3d 362, 369 (3rd Cir.2004). Certain provisions of a statute may be "awkward, and even ungrammatical," but that does not require a finding that the provision at issue is ambiguous.[9] *Lamie v. United States Trustee,*

---

**8.** It is not unusual for a totaled motor vehicle to have salvage value.

**9.** In *Lamie,* the Court found that certain language within section 330 of the Bankruptcy Code was "awkward, and even ungrammatical; but that does not make it ambiguous on the point at issue." 540 U.S. at 534, 124 S.Ct. 1023.

540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004). "Statutory context can suggest the natural reading of a provision that in isolation might yield contestable interpretations." *Price*, 370 F.3d at 369. In *Price*, the Circuit noted that particularly when interpreting the Bankruptcy Code, "the Supreme Court has been reluctant to declare its provisions ambiguous, preferring instead to take a broader, contextual view, and urging courts to not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." *Id., citing Kelly v. Robinson*, 479 U.S. 36, 43, 107 S.Ct. 353, 93 L.Ed.2d 216, (1986).

■ Even if a provision of the Code "reasonably admits of two readings," such "equivocality is not enough to conclude that the provision is ambiguous." *Price*, 370 F.3d at 371. Rather, the provision must then be inserted into the broader context of the Code. "A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme—because the same terminology is used elsewhere in a context that makes its meaning clear, or because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law." *Id. quoting United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 372, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988). Thus, when the Circuit interpreted § 521(2)(A), it first examined the provision within the context of § 521(2) and then within the larger context of the Bankruptcy Code. I will employ these principles as guidance for discerning the application of the hanging paragraph to the uncontested facts in this case.

In summary, the relevant provisions of the hanging paragraph provide that § 506 is inapplicable to a claim described in § 1325(a)(5) if the creditor has a purchase money security interest in a motor vehicle acquired for personal use, and the debt was incurred within the 910-day period before the petition was filed. Debtors have elected the third option under § 1325(a)(5) and are surrendering the collateral. Bankruptcy courts are divided as to whether the hanging paragraph applies when a vehicle is surrendered under § 1325(a)(5)(C) or is limited to when a vehicle is retained under § 1325(a)(5)(B). The majority of cases have concluded that the hanging paragraph applies to both situations. *See In re Moon*, 2007 WL 214409 (Bankr.N.D.Ala.) (collecting cases.) The minority courts have looked to pre-BAPCPA practice and have concluded that the hanging paragraph does not apply when the property is surrendered because prior to the Act, § 506(a) was applicable only when a claim was crammed down to the value of collateral under § 1325(a)(5)(B). *Id. citing In re Particka*, 355 B.R. 616 (Bankr.E.D.Mich.); *In re Zehrung*, 351 B.R. 675 (W.D.Wis.2006) (other citations omitted). The minority courts also find that under pre-BAPCPA practice, the value of a creditor's deficiency claim after it liquidates surrendered collateral is determined by state law, not § 506. *In re Particka* at 624 ("Upon surrender, the 910 creditor still is entitled to enforce its right to payment and, after dispositions of the collateral, that right to payment can still be filed and allowed as an unsecured deficiency claim under § 502."). The court in *Particka* determined that § 506 did not apply in the context of the surrender of a vehicle because upon surrender the estate ceased to have an interest in the property that secured the claim.

■ The majority courts have disagreed, finding that there is no mechanism for bifurcating the secured claim *except* by invoking § 506. In *In re Gentry*, 2006 WL 3392947 (Bankr.E.D.Tenn.), the bankruptcy court held that the hanging paragraph's

"unambiguous mandate results in the elimination of a secured claim's unsecured component, that is, its deficiency." *Id.* at *4 citing *In re Ezell*, 338 B.R. 330, 341 (Bankr.E.D.Tenn.2006) (internal quotations omitted.) Therefore, *Gentry* concluded that it had "no choice but to interpret the Hanging Paragraph as written, *i.e.* that it applies to both [ ] § 1325(a)(5)(B) and (C)." *Gentry* at *4. I agree with the conclusion in *Gentry* that the plain language of the hanging paragraph states that it is applicable to the entirety of § 1325(a)(5) and not just § 1325(a)(5)(B).

Further, the minority position that pre BAPCPA § 506 was inapplicable when property was surrendered is simply incorrect. In *Associates Commercial Corp. v. Rash*, 520 U.S. 953, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997), the Supreme Court addressed methods of valuing collateral under § 506(a). The Supreme Court held that, for purposes of ascertaining value, the " 'proposed disposition or use' of the collateral is of paramount importance to the valuation question...." *Rash*, 520 U.S. at 962, 117 S.Ct. 1879. Noting that a debtor has two options—surrender or retention under the cram down option—the Supreme Court held that the "disposition or use" of the property, and thus its value under § 506(a), turns on the alternative chosen by the debtor. *Id.* "[W]hen the Court spoke of valuing collateral according to the debtor's 'proposed ... use,' it was distinguishing between retention and surrender...." *In re UAL Corp.*, 351 B.R. 916 (Bankr.N.D.Ill.2006). *See also In re Ezell*, 338 B.R. 330, 339 (Bankr.E.D.Tenn. 2006) ("Upon surrender under Pre–BAPCPA § 1325(a)(5)(C), liquidation value was clearly the yardstick by which the allowed secured claim was determined, while, for cramdown purposes under Pre–BAPCPA § 1325(a)(5)(B), replacement value was the criteria.")

For these reasons, I conclude that the plain language of the hanging paragraph precludes application of § 506(a) by a 910 creditor to effectively bifurcate its claim into secured and unsecured portions. CitiFinancial's claim · of $31,038.78. is secured and may not be bifurcated into secured and unsecured amounts under § 506(a). Accordingly, CitiFinancial's objection to Debtors' plan is overruled.

### c. Lack of Good Faith

The Court's conclusion regarding CitiFinancial's ability to effectively bifurcate its claim does not necessarily determine the issue of whether the instant plan may be confirmed. Section 1325(a)(3) requires that a plan be proposed in good faith. While CitiFinancial has not expressly challenged the plan on good faith grounds, it has requested the Court to invoke its equitable powers under § 105(a) to deny confirmation, essentially arguing that Debtors have proposed their plan in bad faith. Had CitiFinancial not raised the issue, I could have considered *sua sponte* whether the chapter 13 plan had been filed in good faith. *Beard v. U.S. Trustee*, 188 B.R. 220 (W.D.La.1995); *In re Smith*, 100 B.R. 436 (S.D.Ind.1989); *In re Fricker*, 116 B.R. 431 (Bankr.E.D.Pa. 1990). CitiFinancial has alleged that Debtors failed to insure the vehicle that Debtor William Price totaled while driving under the influence and that three months after its destruction, Debtors filed a plan proposing to surrender the vehicle in full satisfaction of CitiFinancial's claim. Although Debtors may have satisfied the requirements of § 1325(a)(5), they may not have met the good faith test under § 1325(a)(3). *See In re Turkowitch*, 355 B.R. 120, 2006 WL 3346156, *8, fn. 3 (Bankr.E.D.Wisc.) ("absurdity would result" if hypothetical creditor failed to challenge good faith of hypothetical plan pro-

posing to surrender demolished vehicle in full satisfaction of secured claim).[10]

Demonstration of good faith or lack thereof is a fact intensive inquiry and does not lend itself to decision on summary judgment. *In re Love,* 957 F.2d 1350, 1354–55 (7th Cir.1992); *In re Fleury,* 294 B.R. 1, 5 (Bankr.D.Mass.2003). I decline to determine Debtors' good faith or lack thereof on the current record. Accordingly, CitiFinancial is granted leave to file an amended objection to the plan based on lack of good faith within thirty days of the date of the Order accompanying this Opinion.

## ORDER

After notice and hearing, the objection of CitiFinancial Auto Corp. to Debtors' chapter 13 plan is OVERRULED.

It is further ORDERED that CitiFinancial Auto Corp. is granted leave to file an amended objection to the plan based on lack of good faith within thirty days of the date of this Order.

10. When considering a motion to modify a plan, a debtor's proposal to surrender a damaged or mechanically unsound vehicle has been found to be evidence of bad faith. *See In re Cooper,* 167 B.R. 889 (Bankr.E.D.Ark. 1994) (debtor's request to modify confirmed plan to surrender vehicle destroyed in post-confirmation accident, and on which she had failed to maintain insurance, was made in bad faith where debtor, by acts and omissions, was directly responsible for loss). *See also In re Mason,* 315 B.R. 759 (Bankr.N.D.Cal.2004) (excess post-confirmation depreciation due to fault of debtor may provide grounds for creditor to object to surrender of vehicle for lack of good faith). *But see In re Ussery,* 261 B.R. 227 (Bankr.E.D.Ark.2001) (although vehicle was damaged in accident, debtor's choice to drive vehicle before obtaining replacement insurance was not sufficient evidence of bad faith to sustain objection to plan proposing to surrender vehicle).